261 So.2d 164 (1972)
Jerry E. SMITH, Petitioner,
v.
Alvin USSERY and Aubrey Ussery, d/b/a Ussery Cement Finishing Company, Respondents.
No. 40803.
Supreme Court of Florida.
March 29, 1972.
Rehearing Denied May 12, 1972.
Stanley Epstein, of Mamber, Gopman, Epstein & Miles, North Miami Beach, for petitioner.
David L. Willing, of Adams, George & Wood, Miami, for respondents.
DEKLE, Justice.
Misapplication of a valid legal principle has erroneously denial recovery to an employee in his action for negligence against a separate contractor on the same construction job. The recognized theory adopted as applying, was that which limits employees working "under a common employer in a common enterprise ("statutory fellow servants") to the exclusive remedy of workmen's compensation under Fla. Stat. § 440.11, F.S.A. The "common employer" section of the statute is set forth in § 440.10(1),[1] and has been correctly used in *165 Miami Roofing & Sheet Metal Co. v. Kindt, 48 So.2d 840 (Fla. 1950); May v. J.M. Montgomery Roofing Co., 158 So.2d 147 (3d DCA Fla. 1963); Younger v. Giller Contracting Co., 143 Fla. 335, 196 So. 690 (Fla. 1940).
The same principle was sought to be applied in Jones v. Florida Power Corp., 72 So.2d 285 (Fla. 1954), but was denied in a well-reasoned opinion there by Chief Justice Roberts who was then in the second of his record three terms as Chief Justice of this Court. The same factual situation appears in the present case in which the lower court has misapplied the "common employer" principle, as in Jones, which was affirmed by the Third District at 242 So.2d 878, thus presenting conflict and jurisdiction here. Fla. Const. art. V, § 4(2), F.S.A.[2]
The clarity of reasoning of Chief Justice Roberts (who also authored Miami Roofing, supra) is reflected in the following quote from Jones, supra, at pp. 288-289 (referring in part to Pimental v. John E. Cox Co., 299 Mass. 579, 13 N.E.2d 441, 444):
"`While the work on which the independent contractors and their employees were engaged might well be described as a common job, there was no "common employer" ...'"
* * * * * *
"We agree with the Massachusetts court that the mere fact that the plaintiff and Burns' employee were working on the same general project does not make them employees of a `common employer' ... And, as heretofore noted, if there was no liability as an employer under the Act, there was no immunity from suit as a third-party tortfeasor. Nor can the Corporation [owner] be considered a `contractor,' (and thus the `statutory' employer of Burns' and Grinnell's employees) within the meaning of Section 440.10 quoted supra, since the clear implication in this part of the Act is that there must be a contractual obligation on the part of the contractor, a portion of which he sublets to another. To `sublet' means to `underlet', Webster's New International Dictionary; in the context in which it is here used, the effect of subletting is to pass on to another an obligation under a contract for which the person so `subletting' is primarily obligated. The Corporation, under the facts here present, had no primary obligation under a contract which it was passing on to another. It was not, then, a `contractor' within the meaning of the Act."
The clear distinction on the obtaining of workmen's compensation is set forth in Jones at p. 287 as follows:
"The fact that the Corporation [owner there] in its contracts with Grinnell and Burns required them to provide workmen's compensation for their employees is indeed commendable but is irrelevant to a determination of the question here presented. The question is whether the Workmen's Compensation Act imposed upon the Corporation the duty, as an `employer' and `contractor' to secure compensation for such employees. It is the liability to secure compensation which gives the employer immunity from suit as a third party tortfeasor. His immunity from suit is commensurate with his liability for securing compensation  no more and no less." (emphasis supplied)
In Jones, we reversed the summary judgment on behalf of defendants for the same *166 reason it must be reversed here; namely, that the defendants were not factually in the common employer position to defeat the action, despite the actual existence of compensation coverage. As stated in Jones above, it is the requirement under the act to secure coverage which extends the "common employer" immunity; it is NOT the mere fact that each of the several contractors may have separately had workmen's compensation for its employees; nor that the alleged "contractor", Mr. Cecil Flesher, "put the workmen that were involved on a daily basis on my existing Workmen's Compensation Policy" as a "part of my over-all employees," the premium for which was paid by the hospital and which policy "did not cover subcontractors' employees."
The exclusionary rule here sought to be invoked, does not apply where the only privity of contract or obligation to perform work by such alleged subcontractors was with the owner or its agent and where the true relationship of contractor and "subs" does not exist; for that is the very predicate for the exclusion expressly set forth in the statutory provision § 440.10(1). See footnote 1.
It is apparent then that the necessary privity or relationship among those involved must be present and it is not accomplished by an owner simply naming someone as "general contractor" if there is in fact not such a relationship and such "general contractor" does not actually function as general contractor and does not enter into subcontracts on the job involved. Here the facts show the lack of the necessary privity or relationship.
In the construction of a Hialeah hospital annex the hospital was, in effect, (and perhaps for the commendable purpose of saving money) conducting a construction job itself, using the required general contractor's license of one Cecil Flesher, a member of the hospital board who was paid the nominal sum of $1,000 on a $1.2 million project (plus $7.50 an hour for his actual time on the project). The letter agreement with Flesher will not withstand scrutiny as a purported "general contract" to trigger the exclusion. It spelled out that the hospital was to pay "all costs directly expended on the job, which costs we will advance." It seems significant that the letter agreement with Flesher (which was the only "contract" between them) stated further:
"We also agree to hold you harmless from any and all bills, claims and the like, which might arise from this job, which will be handled by our agent, L.C. Havstad."
These provisions are inconsistent with a general contract for construction and coupled with the other facts here (like "sub-contracts" being made by the hospital through agent Havstad) could not constitute Flesher a general contractor.[3] None of his duties were specified in the agreement and he did not in fact function as a contractor; yet it is through Flesher that the protective device of "common employer" is invoked against the petitioner. This is not sufficient to invoke the protective device under the Workmen's Compensation Law which would prevent the common law action of an employee on the job.
On the same day of the arrangement with Flesher, the hospital entered into a letter agreement with L.C. Havstad "a general contractor who had interest as a member of our church, since this is a church related hospital, to provide his services [5% of cost] with Mr. Flesher's in our construction program." Mr. Havstad was expressly named the hospital's "agent" for the actual construction and he performed as *167 such in that capacity. It thus becomes apparent that Havstad and not Flesher handled the construction and this he did as agent for and on behalf of the hospital. It was Havstad expressly designated as "our agent" for the hospital who contracted directly with petitioner's employer, A.C. Electric Company, and with the cement contractors, Alvin and Aubrey Ussery, whose employee it was who injured petitioner. The "general contractor" Flesher was in no wise a party to such negotiations and contracts. He can therefore hardly be linked as "general contractor" in a common employment situation as held below.
It is undisputed (the contracts so state) that all construction agreements were entered into between Hialeah Hospital (through its "construction agent" Havstad) and the several contractors on the job. These agreements are those of an owner and independent contractors separately (as in Jones) rather than between a true contractor and "subs" which is necessary for workmen's compensation immunity under "common employer" in the initial cases cited. Under these circumstances there is no "common employer" and the necessary predicate is not present to invoke the workmen's compensation exclusive remedy which the trial court and district court allowed under Fla. Stat. § 440.10(1). Accordingly, such independent contractors as these respondents become subject to a common law suit for negligence in these circumstances.
Certiorari is granted; the opinion of the district court is quashed with instructions to reverse the trial court and to reinstate petitioner's action for trial on the negligence and damage issues.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON, ADKINS and McCAIN, JJ., concur.
BOYD, J., dissents.
NOTES
[1] "... In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for and shall secure the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment." (emphasis ours)
[2] The Third District held to the contrary (and consistent with Jones) for an employee of the owner injured by an independent contractor in Cromer v. Thomas, 124 So.2d 36 (3d DCA Fla. 1960).
[3] State ex rel. Auchter Co. v. Luckie, 145 So.2d 239 (1st D.C.A.Fla. 1962); West v. Sampson, 142 So.2d 74 (Fla. 1962).