464 So.2d 178 (1985)
Walter CROON and Janita Croon, His Wife, Appellants,
v.
QUAYSIDE ASSOCIATES, LTD., a Florida Partnership and Quayside Development Corp., a Florida Corp., Jointly and Severally, Appellees.
Nos. 84-362, 84-382.
District Court of Appeal of Florida, Third District.
February 5, 1985.
Rehearing Denied March 20, 1985.
*179 Horton, Perse & Ginsberg and Edward Perse, Robert Sussman, Miami, for appellants.
Joe N. Unger, Welsh & Telander, Miami, for appellees.
Before BARKDULL, HUBBART and DANIEL S. PEARSON, JJ.
BARKDULL, Judge.
Croon, plaintiff in the trial court, appeals an order granting a new trial, on damages only, and an order on post-trial motions (Case No. 84-362). Quayside cross-appeals. Quayside Associates, defendant in the trial court, appeals an adverse final judgment (Case No. 84-382). The appeals have been consolidated.
Quayside Associates, owner and developer of the Towers of Quayside, contracted with Apgar & Markham to be the general contractor of Tower Two. Apgar & Markham subcontracted with Atlantic Coast Development, Croon's employer, to make the plywood forms for concrete pilings. Subsequently, it was determined that Apgar & Markham were not substantially performing and they were discharged. All the contracts and subcontracts with which Apgar & Markham were involved were assigned to Quayside Associates. In September, 1980, Quayside Associates took over as general contractor. In 1981 Croon was injured as a result of falling in a hole on the construction site of the second tower being built. Because of his injury he could not return to work as a construction worker and he retired.
Croon brought suit against Quayside Associates, Ltd. (the owner and developer) and Quayside Development Corp. (the general partner in Quayside Associates, Ltd. who was the general contractor for the third tower to be constructed).
Quayside Associates and Quayside Development defended the suit on the grounds of nonresponsibility for the construction and non-negligence; that they were immune from suit based upon workers' compensation as a bar, pursuant to Section 440.10, Florida Statutes (1979); and on comparative negligence. The jury found Croon 25% negligent and awarded Croon $2,000,000 and his wife, $45,000. Quayside filed a motion for new trial. The trial court ordered Croon to accept a remittitur in the sum of $1,000,000 or have a new trial on damages only. The order on post-trial motions further stated that the remittitur was based upon the fact that the jury amount was excessive, shocked the judicial conscience and was not supported by the evidence in that $1,500,000 was awarded for past and future pain and suffering. The motion for new trial as to Janita Croon was denied. As Croon failed to accept the remittitur the trial court accordingly entered the order vacating the final judgment and ordered a new trial on the issue of damages.
We turn first to the cross-appeals as our ruling thereon will be dispositive to the entire case. We hold first that a directed verdict should have been granted in favor of Quayside Development because it was clear from the evidence that the accident in question happened on a site with which they were not involved. Heps v. Burdine's, Inc., 69 So.2d 340 (Fla. 1954); Sussman v. Tutelman, 445 So.2d 1081 (Fla. 3d DCA 1984).
As to Quayside Associates we hold that a directed verdict should have been granted to them as a successor in interest to Apgar & Markham, the general contractor. By assignment they were responsible for the obligations of the general contractor. The assignment in part reads as follows:

*180 ACCEPTANCE OF ASSIGNMENT
"QUAYSIDE ASSOCIATES, LTD., a Florida Limited Partnership, does hereby accept the foregoing Assignment and agrees to be bound with Apgar & Markham Construction Co., Inc. as Contractor thereunder for the due performance of all of Contractor's obligations arising thereunder from and after the date of said assignment."
Croon, an employee of Atlantic Coast Development, was injured in a job-related accident suffering a herniated disc in the lumbar spine. He was paid compensation benefits by his employer. At the time of Croon's injury Quayside Associates was the owner and also the general contractor by virtue of assignment of the subcontracts by the original general contractor which was "fired". We hold under these circumstances that Quayside Associates was immune from suit under provision of the Workers' Compensation Law.
Section 440.10, Florida Statutes (1979) provides every employer coming within the provisions of the chapter shall be liable for the payment to his employees of specified compensation benefits. Where a contractor sublets any part of his contract to a subcontractor, all of the employees of the contractor and subcontractor engaged on the contract work are deemed to be employed in one and the same business establishment and the contractor shall be liable for and shall secure payment of compensation to all such employees except where the subcontractor has secured such payment.
Section 440.11, Florida Statutes (1979) titled "Exclusiveness of liability" provides: "The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer ... to the employee ... on account of such injury... ."
If the original general contractor, Apgar & Markham, remained on the job through the date on which Croon was injured, January 23, 1981, the suit against Quayside Associates would have been precluded by the immunity doctrine of the Workers' Compensation Law. An owner hiring a general contractor is considered a statutory employer under the terms of the statute. Conklin v. Cohen, 287 So.2d 56 (Fla. 1973); Smith v. Ussery, 261 So.2d 164 (Fla. 1972); See, Jones v. Florida Power Corp., 72 So.2d 285 (Fla. 1954); Sheedy v. Vista Properties, Inc., 410 So.2d 561 (Fla. 4th DCA 1982), pet. rev. den., 419 So.2d 1201 (Fla. 1982).
It is the liability to secure compensation coverage which gives an employer immunity from suit as a third party tortfeasor. Jones v. Florida Power Corp., supra. This immunity can arise either from being an "employer" or a "contractor". In order to be a "contractor" there must be a contractual obligation on the part of the contractor, a portion of which is sublet to another. Jones v. Florida Power Corp., supra.
Here, Apgar & Markham was hired as the general contractor. Apgar & Markham, in turn, hired the subcontractors. Pursuant to the statute and cases, Apgar & Markham had the statutory liability to secure compensation coverage for employees of the subcontractors which they discharged. This liability gave rise to the immunity granted to the owner and contractor by Section 440.11, Florida Statutes (1979). This immunity existed from the time the general contractor was hired.[1]
The liability to secure compensation coverage was directly assumed by Quayside Associates by virtue of the assignments of subcontracts to Quayside upon Apgar & Markham's discharge. With this assumption of liability as a contractor to provide Workers' Compensation coverage automatically arose an additional immunity from suit as a third-party tortfeasor. In addition to the immunity previously existing as a *181 statutory employer, Quayside Associates also became a contractor.
It makes no difference that after Quayside Associates, as the owner, determined it was necessary to terminate the services of Apgar & Markham (long after construction was commenced and long after the subcontracts were entered into) that Quayside Associates undertook to complete the project acting as its own general contractor. This is not equatable to the situation where an owner/developer initially contracts with independent subcontractors. The owner, not having a contractual obligation to sublet the construction contracts, is not deemed a "contractor". See Smith v. Ussery, supra.
The initial arms-length contracts entered into between the owner and the general contractor and the general contractor and the subcontractors, created for the owner an immunity from a tort action by an injured employee if the injury had occurred while the general contractor was still on the job. No case we have found on this subject indicates that where, during the course of construction, it is necessary to terminate the employment of the general contractor who then assigns the subcontracts back to the owner, the immunity from suit which theretofore existed ceased upon termination of the general contractor's employment. Every case in which an owner/developer has been denied immunity under the Workers' Compensation statute has occurred in the context where the owner initially contracted with the subcontractors and was, accordingly, not considered either an employer of the subcontractor's employees or a statutory contractor. These are not the facts of the instant case.
The services of Apgar & Markham as general contractor were terminated as of the date the subcontracts were assigned to Quayside Associates. These assignments carried with them all rights and obligations which the general contractor had while performing its function on the Quayside construction site. One of these obligations, under the statute, was the liability for securing compensation coverage which, in fact, had already been secured by plaintiff's employer. This obligation, or as the cases describe it, "liability" passed from Apgar & Markham to Quayside Associates by virtue of these assignments.
As stated in the Jones v. Florida Power Corp. decision, "It is the liability to secure compensation which gives the employer immunity from suit as a third party tort-feasor." Jones v. Florida Power Corp., supra at 287. This liability arose on the part of Quayside Associates when it stood in the shoes of Apgar & Markham by virtue of the assignments of the subcontracts. It is this liability which gives Quayside Associates immunity from the suit brought by Mr. Croon.
Quayside Associates entered into a valid contract of employment with a general contractor. At that time, all rights and obligations under the Workers' Compensation Act arose. Assignment of the subcontracts back to the owner during the course of construction did not sever the legal relationships previously created so that on the day before the owner was immune from suit and on the day of assignment the immunity disappeared. To hold otherwise, an owner involved in a multi-million dollar construction project would be unable to terminate the services of an incompetent general contractor because all rights and obligations arising under the Workers' Compensation Act would terminate. This was obviously one of the legal considerations when the subcontracts were assigned to the owner which then functioned as the general contractor.
Quayside Associates, the owner, was immune from suit while Apgar & Markham served as general contractor. Quayside Associates became the general contractor by virtue of assignment and was entitled to immunity from suit under Section 440.11 of the Florida Statutes. Under the particular facts of this case, the trial judge erred in failing to direct a verdict for Quayside Associates when it was immune from suit by an injured employee as an alleged third-party tortfeasor.
*182 Therefore we reverse the order under review with directions to enter judgment for the defendants.
Reversed and remanded with directions.
NOTES
[1] This is not a case where the "general contractor" is merely a straw man or alter ego of the owner. See Smith v. Ussery, supra.