Joseph and Barbara WENZEL,
Plaintiffs–Appellees,

v.

BOYLES GALVANIZING CO., et
al., Defendants,

Black & Veatch, Defendant–Appellant.

Jamie Edward FALLEN,
Plaintiff–Appellee,

v.

BOYLES GALVANIZING CO., et
al., Defendants,

Black & Veatch, Defendant–Appellant.

No. 89–4006.

United States Court of Appeals,
Eleventh Circuit.

Jan. 7, 1991.

TUTTLE, Senior Circuit Judge:

After a jury trial apportioning liability, the district court in this negligence action ordered the appellant, Black & Veatch (B & V), to pay damages to the appellees, Jamie Edward Fallen (Fallen) and Joseph Wenzel (Wenzel). B & V now appeals from the orders of the district court denying (1) its motion for summary judgment, (2) its motion for a judgment notwithstanding the verdict, and (3) its motion for a new trial.

## I. STATEMENT OF THE FACTS

In the early 1980's, the Orlando Utilities Commission (OUC) hired B & V as the architect and construction manager for the Curtis H. Stanton Energy Center. The construction management contract between the parties provided generally that B & V would oversee the construction of the project. More specifically, it also required B & V to:

Provide, implement and administer a site safety and health program consisting of, but not necessarily limited to, the following elements:

(1) Develop a project safety manual that will establish contractor safety guidelines and requirements;

(2) Review project contractors' safety programs for compliance with the project safety manual;

(3) Provide daily surveillance of contractor work areas for compliance with safety program;

(4) Develop and invoke procedures for advising contractors of safety violations and deficiencies;

(5) Develop and invoke procedures for initiating corrective action by the commission and backcharge to the contract, if contractor does not comply with safety violation directives;

. . . .

To fulfill these responsibilities, B & V had the authority to issue notices of safety violations, insist that a particular employee be removed from the job, and stop the work of a particular contractor.

The contract further provided that

Lora A. Dunlap, John Edwin Fisher (argued), Orlando, Fla., for Black & Veatch.

Roy B. Dalton, Jr. (argued), Marcia K. Lippincott, P.A., Orlando, Fla., for Wenzel and Fallen.

Before FAY and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

the Construction Manager shall have no responsibility or right to exercise any actual or direct control over employees of the Contractors. The obligations assumed by the Construction Manager hereunder run to and are for the sole benefit of the Commission.... [T]he furnishing of such services shall not make the Construction Manager responsible for construction means, methods, techniques, work sequences or procedures....

In a letter dated April 16, 1985, B & V informed the general contractor that Shurtleff & Andrews, the steel subcontractor which employed the appellees, was not enforcing fall protection procedures. The letter noted that Shurtleff & Andrews had elected to use safety belts rather than safety nets but warned that employees were not tying off their belts. The letter demanded that the general contractor and Shurtleff & Andrews "take a good hard look at this problem and take immediate corrective action whether it be the enforcement of the existing methods or provision of other forms of fall protection. Failure on your part will require the use of perimeter fall protection nets." A B & V field conference memo dated June 20, 1985 indicated that problems with fall protection still had not been resolved.

The accident prompting this lawsuit occurred on December 30, 1985. The appellees, Fallen and Wenzel, were working at the 135 foot level of the Stanton Energy Center. As they started to break the thin metal strap that secured a bundle of steel grating, the band unexpectedly broke and the bundle sprang open, knocking the appellees from their platform. Wenzel fell 18 feet to a steel beam below and suffered serious injuries. Fallen fell 37 feet and severed his arm.

The evidence at trial was uncontroverted that no safety nets were in place below the 135 foot level of the project, although there were nets at other locations at the site. The evidence was also uncontroverted that the appellees had failed to tie off the safety belts that they were wearing at the time of the accident.

## II. STATEMENT OF THE CASE

The appellees, Fallen and Wenzel, initiated this action against the OUC, Boyles Galvanizing Co. (Boyles), Harsco Corp. (Harsco), and the appellant, B & V, in Florida state court. The appellees voluntarily dismissed their suit against the OUC, creating complete diversity of citizenship, and the defendants removed the case to federal court. Prior to trial, the appellees settled with Boyles and Harsco, and the action proceeded solely against B & V.

B & V moved for summary judgment, and the district court denied the motion.

After the liability portion of the trial, the jury found B & V 50% negligent and the appellees 50% negligent. At the conclusion of the damages portion of the trial, the jury awarded $2,500,000 to Fallen and $254,000 to Wenzel. B & V moved for a judgment notwithstanding the verdict and, in the alternative, a new trial. The district court denied both of these motions. The court, however, did grant B & V's motion to reduce the judgment by the amounts already received in settlement from former defendants in the case.

B & V appeals the district court's pretrial order denying summary judgment and the orders denying the motions for a new trial and a judgment notwithstanding the verdict. Specifically, B & V contends (1) that the district court erred in finding that B & V owed to the appellees a duty to provide for their safety at the project site; (2) that the district court erred in finding sufficient evidence to support a jury finding that B & V breached its duty of care to the appellees; (3) that the district court erred in refusing to allow B & V to present evidence on apportionment of damages; and (4) that the district court erred in concluding that Florida Workers' Compensation Law did not afford B & V immunity from liability. We reject all of B & V's claims and affirm the orders of the district court.

## III. DISCUSSION

### A. Duty of Care

B & V contends that it owed no duty of care to the appellees and that the district

court thus erred in denying its motions for summary judgment and a judgment notwithstanding the verdict. First, it argues that its management construction contract with the OUC imposed no duty to provide for the safety of employees working at the site. Second, it argues that even if some language in the contract suggested such a duty, other language specifically disclaimed any liability. We reject both of these arguments.

■ It is well established under Florida law that an architect's duty to provide for the safety of workmen employed in the construction of its designs may arise from the contractual assumption of such responsibility. *Schauer v. Blair Constr. Co.*, 374 So.2d 1160 (Fla.Dist.Ct.App.1979); *Geer v. Bennett*, 237 So.2d 311 (Fla.Dist.Ct.App. 1970). This assumption of responsibility need not be explicit. In the seminal case of *Geer v. Bennett*, for example, the court held that an architect's agreement to "supervise" the work of building contractors could give rise to a positive duty to "insure the safety of workmen during the construction." The court overturned a lower court order granting summary judgment, finding that the question as to whether the contract term "supervision" imposed such a duty was a material issue of fact for the jury. *Geer*, 237 So.2d at 317–318.

■ Under the standards established in *Geer*, it is clear that the district court in this case did not err in denying either B & V's motion for summary judgment or its motion for judgment NOV. In contrast to the *Geer* contract in which the architect merely agreed to "supervise" the construction of its designs, B & V specifically agreed to "[p]rovide, implement and administer a site safety and health program." This language is clearly more explicit than that found adequate to create a question of fact in *Geer*. The jury in this case was certainly entitled to find that B & V had assumed a duty of care for the safety of on-site workers.

■ We also find no language in the contract sufficient to disclaim liability. According to B & V, the contract clause providing that the construction manager shall not be "responsible for construction means, methods, techniques, work sequences or procedures" effectively exculpates B & V from any liability for injuries to employees on the job. We, however, find the governing Florida law to the contrary.

■ Florida law is clear on the requirements for an effective exculpatory clause. Exculpatory clauses are not favored and are effective only if the clause "clearly state[s] that it releases the party from liability for his own *negligence*." *Goyings v. Jack & Ruth Eckerd Foundation*, 403 So.2d 1144, 1146 (Fla.Dist.Ct.App.1981) (emphasis added). A clause simply disclaiming liability in general terms is insufficient to exculpate a party from its own negligence.

In this case, the exculpatory clause in the management contract is simply not specific enough to satisfy the requirements of Florida law. The clause states only that B & V is not liable for the manner in which the project is constructed but says nothing specifically about B & V's own negligence. Since there is no clear statement releasing B & V from liability for its own negligence, we find that the clause is insufficient to exculpate B & V from liability.

### B. Breach of Duty

B & V further argues that, even if it assumed a duty to provide for the safety of workmen, the appellees failed to present sufficient evidence of negligence to support a jury finding of liability. Specifically, B & V contends (i) that the district court erred in denying its motion for summary judgment because, at the time of the motion, the appellees had failed to produce sufficient evidence of negligence to warrant a trial and (ii) that the district court erred in denying its motion for a judgment NOV because the appellees never produced sufficient evidence of negligence to support a jury finding of liability. We reject both of B & V's arguments.

### i. Summary Judgment

■ It is B & V's contention that the appellees did not present sufficient evi-

dence of negligence in response to its motion for summary judgment to create a genuine issue of material fact for the jury. While the appellees subsequently did provide such evidence, B & V asks this court to ignore the evidence presented later at trial and to review only the affidavits and depositions presented to the district court at the time of the motion for summary judgment. The law of this circuit, however, prohibits such a review.

As this court explained in *Stuckey v. Northern Propane Gas Co.*, 874 F.2d 1563, 1567 (11th Cir.1989) (quoting *Holley v. Northrop Worldwide Aircraft Serv., Inc.*, 835 F.2d 1375, 1378 (11th Cir.1988)), we do

> not review the propriety of orders denying summary judgment motions based on the evidence available when the motion was made. Even if summary judgment might have been granted at the time the motion was made, we examine the record to see if 'by trial the evidence ha[s] been supplemented or changed in some manner favorable to the party who opposed summary judgment.'

In this case, there is simply no question that the evidence presented in response to the motion for summary judgment was supplemented at trial in a manner favorable to the appellees. According to B & V, the only favorable evidence offered by the appellees in response to the motion for summary judgment was the deposition testimony of James L. Parrish (an expert in the field of fall prevention) and the OUC management contract. At trial, however, additional evidence included the live testimony of Mr. Parrish, in which he developed his prior deposition testimony, the letters and memoranda of B & V indicating that it had knowledge of inadequate fall protection, and the testimony of numerous lay and expert witness on the availability and feasibility of alternative methods of fall protection. While some of this testimony was controverted, it certainly supplement-ed the evidence submitted in response to the summary judgment motion and is thus sufficient to preclude a reconsideration of the district court's denial of summary judgment.

ii.  Judgment Notwithstanding the Verdict.

B & V further argues that the appellees never produced sufficient evidence of negligence to support a jury finding of liability. We disagree.

■ In its contract with the OUC, B & V agreed to "[p]rovide, implement and administer a site safety and health program." Consequently, it had an implied obligation to perform this duty with the care, diligence and skill of an ordinarily prudent person under similar circumstances. The appellees produced abundant evidence from which the jury could determine how an ordinarily prudent person would have carried out these duties.

■ Numerous lay and expert witnesses testified as to the various fall protection options available to B & V. They testified as to the difficulty of installing such devises. They testified as to the type of work being done on the project and the risks of falling. Also, there was evidence that B & V had knowledge that the fall protection methods being used were inadequate. In short, the jury easily could have found that an ordinarily prudent construction manager on such a project would have insisted that subcontractors install safety nets below every floor.[1] Since the evidence was uncontroverted that safety nets were not in place below the floor where the appellees were working at the time of the accident, the district court did not err in denying B & V's motion for a judgment NOV.

C.  Apportionment of Damages

■ B & V also argues that the district court erred in refusing to permit it to

---

1.  Because we find that the evidence described above is sufficient to support a jury finding of negligence, we do not address B & V's argument that the appellees failed to establish a violation of 29 C.F.R. § 1926.105(a), which provides that safety nets must be in place when the use of safety nets is "impractical." We simply note that Florida law does not require a plaintiff to establish the violation of a relevant safety statute or regulation to make out a successful cause of action for negligence.

present evidence on apportionment of damages, thus entitling B & V to a new trial. As B & V points out, the appellees' own expert witness admitted that some sort of accident would have occurred even if B & V had not been negligent in failing to put safety nets under each floor. According to the expert, the appellees still would have fallen when the grating broke loose, and a safety net probably would have snapped under the weight of the falling steel. Since the appellees probably would have suffered some injuries in such a fall, B & V argues that it should only have to compensate the appellees for those additional injuries caused by the lack of nets.

In *Wm. G. Roe v. Armour & Co.*, 414 F.2d 862, 869 (5th Cir.1969) (quoting *Feinstone v. Allison Hospital, Inc.*, 106 Fla. 302, 143 So. 251, 252 (1932)), this court explained when it is appropriate to apportion damages between two tortfeasors under Florida law.

[J]oint and several liability exists in circumstances where 'two or more wrongdoers negligently contribute to the personal injury of another by their several acts, *which operate concurrently, so that in effect the damages suffered are rendered inseparable.*'

The distinction between limiting the defendant's liability to that part of the harm which he in fact caused and imposing joint and several liability, therefore, is between injuries which are reasonably capable of division, and injuries which are not.

In this case, there is simply no possible basis on which a jury (or anyone else) could have rationally distinguished between the injuries for which B & V was responsible and those caused by the negligence of others. While it is clear that the appellees would have been injured even if B & V had not been negligent, there is simply no way to determine what those injuries would have been. Consequently, there is no way to determine how B & V's particular negligence contributed to the injuries. We hold, therefore, that the district court did not err

in refusing to permit B & V to introduce evidence on the apportionment of damages.

### D. Immunity

B & V's final argument is that it is immune from suit under Florida Statute § 440.11(3) (formerly § 440.11(2)) as a safety consultant and that the district court thus erred in denying its motion for a judgment notwithstanding the verdict. Section 440.11(3) provides as follows:

An *employer's* workers' compensation carrier, service agent, or *safety consultant* shall not be liable as a third-party tortfeasor for assisting the employer in carrying out the employer's rights and responsibilities under this chapter by furnishing any safety inspection, safety consultive service, or other safety service incidental to the workers' compensation or employers' liability coverage or to the workers' compensation or employer's liability servicing contract.

Fla.Stat.Ann. § 440.11(3) (West 1981 & Supp.1990). There is no question that B & V was acting in the capacity of a safety consultant at the time of the accident; we hold, however, that B & V was not acting as the *"employer's"* safety consultant and that this section does not immunize B & V from liability.

The Supreme Court of Florida has clearly explained that only an entity statutorily required to provide workers' compensation insurance may be an "employer" for the purposes of § 440.11(3). In *Gulfstream Land & Dev. Corp. v. Wilkerson*, 420 So.2d 587, 589 (Fla.1982) (citing *Conklin v. Cohen* 287 So.2d 56 (Fla.1973); *Smith v. Ussery*, 261 So.2d 164 (Fla.1972)), for example, the court stated: "Since *Jones v. Florida Power Corp.*, 72 So.2d 285 (Fla.1954), this Court has consistently held that immunity from suit under the workmen's compensation statutes follows the statutory liability for providing such coverage."

In this case, B & V's only connection with the project was through the OUC, and B & V concedes that the OUC was under no statutory liability to provide workers' compensation coverage.[2] The OUC con-

2. The employment relationship among the parties is straight forward. Fallen and Wenzel

tractually assumed responsibilty for providing workers' compensation coverage under a so-called "wrap insurance" program but was under no statutory duty to do so. As the parties explained, "wrap insurance" is a system in which one entity (in this case the OUC) provides all of the insurance for a particular project (workers' compensation, liability, theft, etc.). It is certainly less expensive to purchase insurance in this manner, but there is no legal obligation to do so. Consequently, the OUC cannot be an "employer" under § 440.11(3).

Since the OUC is not an "employer" under § 440.11(3), B & V cannot be an employer's safety consultant. While it is "commendable" that the OUC provided workers' compensation insurance and that B & V assisted, this "does not entitle the [defendant] to the exclusivity defense of § 440.11. In Florida, an employer is entitled to the exclusivity defense only to the extent that such employer has a *duty* to provide workmen's compensation coverage." *Richardson v. United States*, 577 F.2d 133, 135 (10th Cir.1978). Therefore, we hold that § 440.11(3) does not immunize B & V from suit.

## IV. CONCLUSION

We AFFIRM the orders of the district court denying summary judgment, a new trial, and a judgment notwithstanding the verdict.

were employed by Shurtleff and Andrews, the steel subcontractor; Shurtleff and Andrews were employed by Gust K. Newberg, the general contractor; Gust K. Newberg was employed by the OUC. The OUC also employed B & V as the architect and construction manager.