385 So.2d 676 (1980)
ATLANTIC COAST DEVELOPMENT CORPORATION, Appellant,
v.
NAPOLEON STEEL CONTRACTORS, INC., Nelacar Corp., and Nelacar Construction Corp., Appellees.
Nos. 79-913, 79-1154.
District Court of Appeal of Florida, Third District.
June 10, 1980.
Rehearing Denied July 25, 1980.
*678 Bradford, Williams, McKay, Kimbrell, Hamann, Jennings & Kniskern and R. Owen Ricker, Jr., Miami, for appellant.
Peters, Pickle, Flynn, Niemoeller, Stieglitz & Hart and Richard G. Daniels; High, Stack, Lazenby, Bender, Palahach & Lacasa and George C. Bender, Miami, for appellees.
Before NESBITT and BASKIN, JJ., and CHARLES A. CARROLL (Ret.), Associate Judge.
NESBITT, Judge.
This is an appeal from a judgment for common law indemnity entered upon a jury verdict against a subcontractor who was the employer of a workman killed on a construction site. The indemnity suit followed a settlement agreement reached by the appellees and the personal representative of the decedent's estate in a wrongful death action.
The issue before this court, simply stated, is whether one may delegate a nondelegable duty. Upon analysis, we find this apparent inconsistency is neither apparent nor inconsistent and affirm the judgment.
The accident occurred on a construction project in which appellees, Nelacar Corporation and Nelacar Construction Corporation, were owner and general contractor, respectively. Appellee, Napoleon Steel Contractors, Inc. (Napoleon), was a subcontractor and had a crane set up on the construction site. For convenient reference and because Nelacar Corporation and Nelacar Construction Corporation have presented themselves in this appeal and in the action below collectively, they will be referred to as "Nelacar". Appellant, Atlantic Coast Development Corporation (Atlantic), also a subcontractor on the project, was assigned the task of preparing the forms for the pouring of concrete "decks". This unfortunate accident occurred on one of those "decks" which was several stories below a platform extending out from the eleventh floor to which Napoleon was hoisting concrete blocks with its crane.
Recognizing the danger of having men working below a crane that was lifting blocks, the crane operator for Napoleon spoke with, among others, Hershel Carver, Atlantic's on-the-job supervisor. The problem stemmed from the fact that Napoleon's crane operator, although being able to check the area before a particular lift was made, was unable to watch the load he was *679 raising on the crane and the deck area several stories below simultaneously. A system was worked out to warn the men working nearby whereby a man who was loading the blocks on the crane would yell out a warning at the time a lift was about to be made. On one such lift, while the blocks were being unloaded on the platform on the eleventh floor, some blocks fell and one struck and killed the decedent, Frank Edwards.
A crane in operation is inherently dangerous. Geffrey v. Langston Const. Co., 58 So.2d 698 (Fla. 1952). Napoleon, involved in this inherently dangerous activity, had a nondelegable duty to use care in carrying out its responsibilities. Part of its responsibility would be to look out for the safety of the workers around the crane. The nature of the operation of a crane precluded the operator from continually checking to ensure that no one was dangerously close to the area during a lift.
The facts presented to the jury indicated that Atlantic, through its supervisor, Hershel Carver, agreed to assume the duty, which was otherwise owed by Napoleon, of keeping his men safely away from the proximity of the crane while it was in operation.
Holding a particular undertaking to be nondelegable means that responsibility, i.e., ultimate liability, for the proper performance of that undertaking may not be delegated. The term nondelegable does not preclude delegation of the actual performance of the task. "Nondelegable" applies to the liabilities arising from the delegated duties if breached. Accord Restatement (Second) of Agency § 214 and Ch. 14 Title C. Introductory Note (1958); Restatement (Second) of Torts § 427 (1965); see Mills v. Krauss, 114 So.2d 817, 819 (Fla. 2d DCA 1959), cert. denied 119 So.2d 293 (Fla. 1960).
In discussing nondelegable duties and indemnity, Chief Judge Breitel, for the Court of Appeals in New York, in Kelly v. Diesel Const. Div. of Carl A. Morse, Inc., 35 N.Y.2d 1, 7, 315 N.E.2d 751, 754, 358 N.Y.S.2d 685, 689-90 (1974), stated that:
[T]he use of the term "nondelegable" was applied properly not to duties that could not be delegated but to liabilities arising from the delegated duties if breached. The fact and the law always was that the duties could be delegated but that first instance liabilities which arose from breach of the duties could not be delegated as against persons injured by the breach of the duties. And, of course, in reason, one who delegated a duty to another should have continued to be entitled to recover from the delegate for the harm sustained by him because of the delegate's breach of duty, namely, having been cast in judgment as vicariously liable.
Our Supreme Court, in Houdaille Industries, Inc. v. Edwards, 374 So.2d 490 (Fla. 1979), determined that:
Indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other and is allowable only where the whole fault is in the one against whom indemnity is sought.... It shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable.
374 So.2d at 492-93.
In the instant case, Nelacar, who was the owner and general contractor and actively supervised the daily construction operations, had a duty to keep its premises safe for all the workmen on the job and will be ultimately held liable for injuries occurring on its worksite. Conklin v. Cohen, 287 So.2d 56 (Fla. 1973); 20 A.L.R.2d 868, 873 (1951).[1] Additionally, "[w]hen the nature *680 of the work done by an independent contractor is inherently dangerous, [such as use of a crane] then the duty of care in its performance is nondelegable by the employer." Bialkowicz v. Pan American Condominium No. 3, Inc., 215 So.2d 767, 772 (Fla. 3d DCA 1968), cert. denied 222 So.2d 751 (Fla. 1969). If an injury resulting therefrom was caused solely through the fault of another, Nelacar would be held responsible due to its vicarious, constructive, derivative, or technical liability. Houdaille Industries, Inc. v. Edwards, supra. Absent a finding of actual fault on the part of Nelacar, Nelacar would be entitled to indemnity from one who should bear the cost because it was the latter's wrongdoing for which Nelacar will be held liable. Having delegated the task to Napoleon to operate the crane, any breach of that duty by Napoleon would allow Nelacar to seek indemnity for Napoleon's breach of duty if Napoleon were to be found at fault and Nelacar were to be found without fault.
Likewise, Napoleon, involved in an inherently dangerous activity, may delegate the duty to look out for the safety of the workers to Atlantic. Napoleon would remain liable for injuries to third persons such as Atlantic's employee, Edwards, for a breach by Atlantic of the duty delegated to it. Napoleon, in turn, if found to be without fault, would be allowed to seek indemnity from Atlantic who failed to properly carry out the duty that was delegated to it. In such a situation, Nelacar, who has ultimate liability, would also be allowed to seek indemnity from Atlantic.
The jury found that Atlantic, through Hershel Carver, had accepted responsibility for keeping its workers from underneath the crane. They also found that Atlantic breached that duty. Unfortunately, at the particular moment that the breach occurred, a load of block fell and ultimately killed Atlantic's employee, Edwards, who had been allowed and directed to work in the area by Hershel Carver. Consequently, Napoleon would be held liable and, in turn, Nelacar, as either general contractor or owner, would also be held liable. Since the jury found that Nelacar and Napoleon were without fault, their liability in the instant case would only be vicarious and one who is held vicariously liable for acts which were the fault of another may seek indemnity from the actual primary active wrongdoer. Houdaille Industries, Inc. v. Edwards, supra.
Appellant's next contention is that indemnity was improper in that appellees were not without fault and were therefore joint tortfeasors. There can be no indemnity between joint tortfeasors. Houdaille Industries, Inc. v. Edwards, supra; Seaboard Coast Line Railroad Co. v. Smith, 359 So.2d 427 (Fla. 1978) and Stuart v. Hertz Corporation, 351 So.2d 703 (Fla. 1977). On the evidence presented and upon the instructions given to the jury, a verdict was returned finding for the appellees. The instructions indicated that if the jury found either of the appellees to be at fault, a verdict would have to be rendered in favor of Atlantic. No such finding was made and the jury returned the verdict of which the appellant now complains.
And to this point, appellant alleges error in that the instructions given to the jury were erroneous. Atlantic's contention is that proper instructions would have tracked the language of Houdaille v. Edwards, supra. Initially, we point out that the failure of a party to request an omitted instruction or to object to the admission of a particular instruction precludes that party from raising as error that point on appeal. Collard v. Keeton, 317 So.2d 121 (Fla. 3d DCA 1975) and Fleitas v. Robinson, 273 So.2d 419 (Fla. 3d DCA 1973). Additionally, we point out that the instructions which were actually given are in accordance and premised on the cases relied upon in Houdaille Industries, Inc. v. Edwards, supra.
The final point presented by appellant goes to the reasonableness of the settlement and the liability of appellees to *681 the original plaintiff. The jury was instructed as to this requirement and found the settlement to be reasonable. We point out, however, that such a showing is only required when a settlement has been entered into without notice or the indemnitor has not had an opportunity to defend. MacArthur v. Gaines, 286 So.2d 608 (Fla. 3d DCA 1973). In the instant case, Atlantic was on notice of the proceedings. The record indicates that Atlantic was involved as a third party defendant up until the time of pretrial conference when third party claims were severed. Atlantic, as the deceased's employer, had knowledge of the original action brought against Nelacar and Napoleon but did not seize upon the opportunity to appear and defend that phase of the litigation. Olin's Rent-A-Car System, Inc. v. Royal Continental Hotels, Inc., 187 So.2d 349, 351 (Fla. 4th DCA), cert. denied, 194 So.2d 621 (Fla. 1966). The judgment entered against Nelacar and Napoleon, if without fraud or collusion, is conclusive against Atlantic as to all material questions therein determined. MacArthur v. Gaines, supra, and Westinghouse Electric Corp. v. J.C. Penney Co., 166 So.2d 211 (Fla. 1st DCA 1964). This situation is unlike one where an action was brought against a party and he defends that action without notifying the true party who should have been sued and thereafter tries to bring an action for indemnity. In this case, the third party action for common law indemnity was filed against Atlantic prior to the trial and ultimate settlement.
The judgment appealed from is affirmed.
NOTES
[1] Absent active participation or the dual capacity of owner/general contractor present in this case, an owner will not normally be held responsible for providing a safe work area when he has turned the control and oversight of the project over to a general contractor. See Cuyahoga Wrecking Corp. v. Mastres, 368 So.2d 380 (Fla. 3d DCA), cert. dismissed 375 So.2d 911 (Fla. 1979); Conklin v. Cohen, supra.