454 So.2d 14 (1984)
The GRAND UNION COMPANY, a Delaware Corporation, and Spector & Sons and Liberty Mutual Insurance Company, Appellants,
v.
Arline ROCKER, Appellee.
Nos. 83-1594, 83-1617 and 83-1640.
District Court of Appeal of Florida, Third District.
July 17, 1984.
Magill, Reid & Lewis and R. Fred Lewis, Daniels & Hicks and Patrice A. Talisman, Miami, Richard E. Hardwick, Coral Gables, for appellants.
Gilmour, Morgan & Rosenblatt and Victor Lance, Miami, for appellee.
Before BARKDULL, BASKIN and FERGUSON, JJ.
*15 BASKIN, Judge.
In consolidated appeals, The Grand Union Company (Grand Union) and Spector & Sons challenge adverse judgments entered in a slip-and-fall action. We reverse.
On a rainy day in August, 1980, Arline Rocker and her daughter went shopping at the Grand Union store located at 199th Street and N.W. 2nd Avenue in Miami. When they finished shopping, Mrs. Rocker asked her daughter to wait in front of the store with the groceries while Mrs. Rocker went to the parking lot to get the car. As Mrs. Rocker started down the ramp in front of the store, she slipped and fell, injuring herself. Seeking to recover damages for these injuries, Mrs. Rocker filed suit against Grand Union, Spector & Sons (the property owner), and Spector & Sons' insurer, Liberty Mutual Insurance Company.
In her complaint, Mrs. Rocker alleged that appellants negligently maintained the sidewalks and the parking and service areas, and allowed the ramp at the entrance of the store to remain in a dangerous and unsafe condition. Grand Union filed a crossclaim against Spector & Sons for contribution and indemnification. At trial, Mrs. Rocker presented expert testimony that the ramp violated both the present South Florida Building Code and the code in effect in 1965 when the ramp was built. The experts, an architect and a civil engineer, testified that the slope of the ramp exceeded the maximum slope specified in the building codes and that the ramp did not have the required non-slip or "broomed" concrete surface. At the conclusion of all the evidence, and despite the objections of appellants, the trial court instructed the jury that a violation of the South Florida Building Code constitutes negligence and that if the jurors found that "a person alleged to have been negligent violated this ordinance, such person was negligent." The jury returned a verdict finding Grand Union 60% negligent, Spector & Sons 40% negligent and Mrs. Rocker not negligent. The court entered final judgment in accordance with the verdict and directed a verdict in favor of Spector & Sons on Grand Union's indemnification claim. Grand Union appeals the order directing a verdict in favor of Spector & Sons on the indemnification claim and both Grand Union and Spector & Sons seek reversal of the final judgment entered in favor of Mrs. Rocker.
The primary issue presented for consideration concerns the propriety of the trial court's instruction to the jury that a violation of the South Florida Building Code is negligence. We must determine whether a violation of the South Florida Building Code is the type of statutory violation which would constitute negligence per se. In deJesus v. Seaboard Coast Line Railroad, 281 So.2d 198 (Fla. 1973), the Florida Supreme Court stated that not all violations of statutes are negligence per se. The court divided statutory violations into three categories: (1) violation of a strict liability statute designed to protect a particular class of persons who are unable to protect themselves, constituting negligence per se; (2) violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular injury or type of injury, also constituting negligence per se; (3) violation of any other kind of statute, constituting mere prima facie evidence of negligence.
The South Florida Building Code requires that ramps do not exceed a specific slope and that they have either a "non-slip" or "broomed concrete" surface. S.Fla. Bldg.Code, §§ 3106.2; 3106.6 (1979); S.Fla. Bldg.Code, § 3103 (1965).[*] Violations of *16 the code fall outside the parameters of the strict liability category set forth in deJesus. Furthermore, building code violations do not fit into the second deJesus category because the building code is designed to protect the general public rather than a particular class of individuals. See Groh v. Hasencamp, 407 So.2d 949 (Fla. 3d DCA 1981), review denied, 415 So.2d 1360 (Fla. 1982) (violation of zoning ordinance for protection of general public rather than particular class of persons evidence of negligence and not negligence per se); Schulte v. Gold, 360 So.2d 428 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 1367 (Fla. 1979) (violation of statute providing that every public lodging establishment shall be properly plumbed, lighted, heated, cooled and ventilated would not constitute negligence per se because such statute was designed to protect public generally and not specific class of persons); Morrison Cafeterias Consolidated v. Lee, 215 So.2d 491 (Fla. 1st DCA 1968) (because violation of building code is at most prima facie evidence of negligence, it was reversible error to charge jury that a violation of the code constituted negligence per se). See generally, Richardson v. Fountain, 154 So.2d 709 (Fla. 2d DCA), cert. denied, 157 So.2d 818 (Fla. 1963). That protection is extended to the general public by the building code is evidenced by the intent expressed in Chapter 553, Florida Statutes, (1979), mandating that Florida adopt building codes
to provide a mechanism for the promulgation, adoption, and enforcement of state minimum building codes which contain standards flexible enough to cover all phases of construction and which allow reasonable protection for public safety, health, and general welfare for all the people of Florida at the most reasonable cost to the consumer.
§ 553.72, Fla. Stat. (1979). In addition, evidence that the aim of the building code is the protection of the general public appears in its stated purpose:
The purpose of this Code is to provide certain minimum standards, provisions and requirements for safe and stable design, methods of construction and uses of materials in buildings and/or structures hereafter erected, constructed, enlarged, altered, repaired, moved, converted to other uses or demolished, to provide for the safety of workers and others during these operations and to regulate the equipment, materials, use and occupancy of all buildings and/or structures. The provisions of this Code shall be deemed to supplement any and all State laws of the State of Florida relating to building.
S.Fla.Bldg.Code, § 102 (1979).
For these reasons, we conclude that the violations of the South Florida Building Code demonstrated in this case are only prima facie evidence of negligence and not negligence per se. We therefore hold that the trial court erred in instructing the jury that a code violation constituted negligence per se; a new trial is required. Judgment entered pursuant to the jury verdict and order on indemnification are reversed.
Remanded for further proceedings consistent with this opinion.
NOTES
[*] The building code requirements applicable here provide:

Ramps shall be classified as Class A or Class B in accordance with the following table:

---------------------------------------------------------------
 Class A Class B
---------------------------------------------------------------
Width 44 inches and greater 30 to 44 inches
---------------------------------------------------------------
Slope 1 to 1 3/16 in 12 1 3/16 to 2 in 12
---------------------------------------------------------------
Maximum height
 between landings No limit 12 feet
---------------------------------------------------------------

(a) A ramp shall have a non-slip surface.
(b) Broomed concrete is accepted as a non-slip surface.
S.Fla.Bldg.Code, §§ 3106.2; 3106.6 (1979).
Ramps shall have non-slip surfaces and shall have a slope not greater than 1 in 8.
S.Fla.Bldg.Code, § 3103(b) (1965).