468 So.2d 417 (1985)
CADILLAC FAIRVIEW OF FLORIDA, INC., Appellant,
v.
Jeffrey CESPEDES and Eugenia Cespedes, His Wife, Appellees.
Jeffrey CESPEDES and Eugenia Cespedes, His Wife, Appellants,
v.
STATEWIDE ENTERPRISES, INC., Appellee.
Nos. 83-2804, 83-2572.
District Court of Appeal of Florida, Third District.
April 30, 1985.
Rehearing Denied May 29, 1985.
*418 Ress, Gomez, Rosenberg & Howland and David Howland and Steven A. Edelstein, North Miami, for appellant Cadillac Fairview of Florida, Inc.
Bloom & Feola, Lawrence & Daniels and Adam H. Lawrence, Miami, for appellants/appellees Jeffrey and Eugenia Cespedes.
Sparber, Shevin, Shapo & Heilbronner and Nancy Schleifer, Miami, for appellee Statewide Enterprises, Inc.
*419 Before HENDRY, BASKIN and JORGENSON, JJ.
HENDRY, Judge.
By these consolidated appeals the appellant/defendant Cadillac Fairview of Florida, Inc. (Cadillac) contests the denial of its motions for summary judgment and for post-trial relief, as well as the adverse final judgment entered upon the jury verdict, and the cost judgment. The appellant/plaintiff Jeffrey Cespedes challenges the correctness of the order vacating a default entered against a co-defendant, Statewide Enterprises, Inc. (Statewide). For the reasons which follow, we affirm.
Jeffrey Cespedes was severely injured when he fell through an opening on the second story of a house being constructed in a development known as the Hammocks. Cespedes was employed as a carpenter by Bamco, a subcontractor working at the job site. The apparent cause of his fall was the absence of safety guard rails to protect an opening which was to be a stairwell. Cespedes fell backwards into the opening. Bamco paid Cespedes the appropriate worker's compensation. Thereafter, Cespedes brought this action alleging negligence on the part of the defendants for not protecting the opening and failing to provide a safe working space. The action was filed against Cadillac, the developer, and against Creech Construction Corp. (Creech), Statewide, and Sunward Enterprises, Inc. as subcontractors. (Creech settled with Cespedes prior to trial and is not a party to this appeal.)
The trial focused on which one of two houses being constructed simultaneously was the site of the accident. The location of the accident was significant in that Cadillac was a statutory "contractor" as defined in section 440.10, Florida Statutes (1979)[1] on the one home it was constructing for an owner. Thus, under the exclusiveness of liability provisions of section 440.11, Florida Statutes (1979),[2] Cadillac was immune from suit by Cespedes for injuries he sustained in the construction of this home. On the other lot (Cadillac's lot) Cadillac had purchased the land prior to contracting with a prospective home purchaser. The court bifurcated the jury verdict form in order to determine the location of the accident, ruling that Cadillac would not enjoy the immunity of section 440.11, Florida Statutes (1979), if the accident had occurred on Cadillac's lot.
Cadillac also defended the action alleging that Cespedes was comparatively negligent and that the sole proximate cause of the accident was the negligence on the parts of Statewide, Creech and/or Sunward. Crossclaims against Statewide, Creech and Sunward and a third-party complaint against Bamco were filed by Cadillac, and were subsequently severed from the trial issues. During trial, however, the jury was made aware that Cadillac had brought suit against Bamco for indemnification.
Prior to trial Cadillac moved in limine to preclude any reference to OSHA[3] and the South Florida Building Code[4] as they related *420 to Cadillac. The trial court denied the motion. Cespedes' expert witness testified that it was the responsibility of Cadillac, as well as all subcontractors working on the job, to make sure that guard rails were installed to protect the opening on the second story.
At the conclusion of trial, the jury returned a verdict finding that the accident occurred on Cadillac's lot, that Statewide and Sunward were without fault, that Cadillac was 85% negligent and that Cespedes was 15% negligent, and awarding Cespedes damages in the amount of $750,000.
Cadillac raises three issues which deserve discussion. Firstly, Cadillac contends that it is a general contractor, and thus, a statutory "employer" immune from suit by the employee of a subcontractor, pursuant to sections 440.10 and 440.11, Florida Statutes (1979); secondly, that if it is considered to be an owner it is not liable for Cespedes' injuries as it did not participate in the daily activities of the construction; and thirdly, that it was reversible error to allow in evidence OSHA regulations and the South Florida Building Code and not to give Cadillac's requested special jury instruction that the owner of premises [Cadillac] is not responsible for meeting the standards set forth in OSHA and the South Florida Building Code.
Regarding Cadillac's first contention, the trial court was correct in its determination that Cadillac was not a statutory "contractor" pursuant to chapter 440, Florida Statutes. Under Florida worker's compensation law, employers who provide worker's compensation benefits are immune from tort suit by employees injured in the course of their employment. § 440.10, Fla. Stat. (1979). "Contractors" who sublet work become statutory "employers" of their subcontractors' employees for the purpose of securing payment of compensation. § 440.11(1), Fla. Stat. (1979). It is the existence of the liability to secure compensation which gives the "employer" immunity. The record here reveals that Cadillac contracted directly with each of its subcontractors. The exclusionary rule sought to be invoked by Cadillac does not apply where the only privity of contract or obligation to perform work by the alleged subcontractors is with the owner-builder and where the true relationship of contractor and subcontractor does not exist. The relationship is the predicate upon which the exclusion expressly set forth in section 440.11 is based. Smith v. Ussery, 261 So.2d 164 (Fla. 1972); Croon v. Quayside Associates, Ltd., 464 So.2d 178 (Fla. 3d DCA 1985). Under the clear meaning of chapter 440, there must be a contractual obligation on the part of the contractor, a portion of which he sublets to another. Jones v. Florida Power Corp., 72 So.2d 285 (Fla. 1954); Sheedy v. Vista Properties, Inc., 410 So.2d 561 (Fla. 4th DCA), rev. denied, 419 So.2d 1201 (Fla. 1982). Cadillac, under the facts present here, had no primary obligation under a contract which it was passing on to another. It was not a "contractor" under the Worker's Compensation Act. Motchkavitz v. L.C. Boggs Industries, Inc., 407 So.2d 910 (Fla. 1981); Sisk v. General Builders Corp., 438 So.2d 65 (Fla. 4th DCA 1983). We note that Allison Developments, Inc. v. Rudasill, 202 So.2d 752 (Fla. 1967), upon which Cadillac solely relies, is not applicable to these *421 circumstances where there was fee ownership of the property prior to Cadillac's contracting with a prospective purchaser.
Cadillac's second contention revolves around the principle of law that an owner may be held liable for the injuries of an independent contractor if he has actively participated in the construction to the extent he directly influenced the manner in which the work is performed. Conklin v. Cohen, 287 So.2d 56, 58 (Fla. 1973). It is true, as Cadillac asserts, that an owner has a right to inspect the work of an independent contractor to determine that the work conforms to the contract and to reject unsatisfactory work and demand that it be made satisfactory. This reservation is not a usurpation of control and does not change an owner from a passive non-participant to an active participant in the construction. However, the record discloses that this was not the case here. Cadillac had a staff of field supervisors who oversaw, directed and coordinated the construction project. The superintendent made daily progress reports to Cadillac and sometimes became physically involved in the construction. Additionally, Cadillac obtained the necessary permits for the construction. Cadillac, who was the owner and general contractor, had a duty to keep its premises safe for all the workmen on the job, is not afforded immunity and is liable for injuries occurring at the work site. Conklin v. Cohen; Van Ness v. Independent Construction Co., 392 So.2d 1017 (Fla. 5th DCA), rev. denied, 402 So.2d 614 (Fla. 1981); Atlantic Coast Development Corp. v. Napoleon Steel Contractors, Inc., 385 So.2d 676 (Fla. 3d DCA 1980).
Cadillac's third assertion concerns the propriety of allowing expert testimony on OSHA regulations and the South Florida Building Code during the trial. The expert was allowed to read into evidence the applicable guidelines set forth in the building code and was allowed to opine that it was Cadillac's responsibility to provide a safe working place. While the admission of evidence is a matter within the sound judicial discretion of the trial judge, whose decision in that regard must be viewed in the context of the entire trial, Jimenez v. Gulf & Western Manufacturing Co., 458 So.2d 58 (Fla. 3d DCA 1984), we have stated before and state again now that trial courts must make certain that juries understand that simply because OSHA is a federal law, it is not dispositive on state law questions of negligence or products liability. Jimenez v. Gulf & Western, 458 So.2d at 60 n. 1. OSHA does not provide the basis for an independent federal cause of action against either employers or third parties; nor does it enlarge or diminish common law or statutory rights, duties, or liabilities. 29 U.S.C. § 653(b)(4) (1976). Perhaps, with the proper limiting instruction, evidence of an employer's OSHA violation might pertain to evidence of duty and proximate causation in a negligence action or perhaps might constitute some evidence of industry custom or practice. Furthermore, the South Florida Building Code is a statute regulating the construction of buildings. Its purpose is for the protection of the public, not construction workers like Cespedes. Grand Union Co. v. Rocker, 454 So.2d 14 (Fla. 3d DCA 1984); § 553.72, Florida Statutes (1979). While demonstrations of violations of the code are evidence of negligence, Liberty Mutual Insurance Co. v. Kimmel, 465 So.2d 606 (Fla. 3d DCA 1985), Cespedes' showing that Cadillac violated the South Florida Building Code could not, by itself, support a finding that Cadillac was liable. However, we find that admission of evidence of the OSHA and South Florida Building Code standards was harmless in light of the other competent substantial evidence presented.
We note in passing that a negligence per se instruction regarding violations of the building code, such as was given by the trial court in this case, was error. Grand Union v. Rocker, 454 So.2d at 16. Nonetheless, since appellant does not challenge on appeal the issue of the propriety of this instruction, we decline to address this matter. See City of Miami v. Steckloff, 111 So.2d 446 (Fla. 1959); Anderson *422 v. State, 215 So.2d 618 (Fla. 4th DCA 1968). The trial court's orders and the final and cost judgments complained of by appellant Cadillac do not present reversible error.
We turn now to Cespedes' claim that it was error for the trial judge to vacate a default entered against Statewide. Our standard of review is limited to determining whether the trial court grossly abused its discretion. Garcia Insurance Agency, Inc. v. Diaz, 351 So.2d 1137 (Fla. 2d DCA 1977). A trial court has the inherent authority to control its own interlocutory orders prior to final judgment. North Shore Hospital, Inc. v. Barber, 143 So.2d 849, 851 (Fla. 1962). Additionally, there exists a longstanding policy of liberality toward the vacating of defaults. Id. at 853. This principle of liberality places a heavier burden on the party seeking to reverse an order granting a motion to vacate default. B.C. Builders Supply Co., Inc. v. Maldonado, 405 So.2d 1345 (Fla. 3d DCA 1981). Having carefully reviewed the record, we conclude that the trial court acted properly when it determined that Statewide demonstrated excusable neglect, a meritorious defense and due diligence in seeking relief upon learning of the default. Id. at 1347. Therefore the order granting the motion to set aside the default entered against Statewide was correct.
For the foregoing reasons, the orders and final judgment appealed are affirmed.
Affirmed.
NOTES
[1] Section 440.10(1) establishes the employer's liability for payment of worker's compensation and provides in pertinent part:

In case a contractor sublets any part or parts of his contract work to a subcontractor ... all of the employees of such contractor and subcontractor ... shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment... .
[2] 440.11 Exclusiveness of liability. 

(1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to ... the employee . .. except that if an employer fails to secure payment as required by this chapter, an injured employee . .. may elect to claim compensation under this chapter or to maintain an action ... for damages on account of such injury... .
[3] The Occupational Safety and Health Act, 29 U.S.C. §§ 651-678 (1976) (as amended).
[4] The relevant provision of the South Florida Building Code is § 3312, which states as follows:

All floor openings, used as hoistways or elevator shaftways, shall be guarded on all sides, except the side being used for loading or unloading. Guards shall be barricades not less than three feet high, placed not less than two feet distant at all points from the edges of such openings. If guard rails are used, toe boards shall be provided along the edges of the openings. Sides left open for loading or unloading shall be guarded by similar solid doors or gates.
All floor openings used as stairways, or for the accommodations of ladders or runways, shall be guarded by railings and toe boards.
All other floor openings shall be guarded on all sides by solid barriers not less than three feet high, or by railings and toe boards or shall be planked over or otherwise covered over by temporary construction capable of sustaining safely such loads as are likely to come thereon.
Barriers for the guarding of openings used as hoistways or for elevators shall be constructed so that workers cannot thrust head, arms or legs through them, and loose material cannot fall or be pushed into the shaftway.
Barriers and guard rails around floor openings shall remain in place until permanent enclosures or protection are otherwise provided.