THOMPSON, J.,
concurring in part and dissenting in part.
I agree with the disposition of two of the points raised on appeal. However, I respectfully dissent to the ruling on the motion for partial summary judgment. The issue at the summary judgment hearing was who controlled the construction site at the time of the accident and who was responsible for the safety of persons on the construction site: JWH, the Knotts or both. The Knotts argued that JWH was the general contractor and was responsible for a safe work area. JWH argued that it did not control the construction site and that therefore the Knotts were responsible for the safety of persons on the site. The trial judge ruled as a matter of law that JWH exercised some control over the construction site but that the degree of control was a jury issue. I would affirm because the ruling is supported by testimony, particularly the testimony of JWH’s employees.
Mr. Larsen, the construction manager for JWH, initially pulled and paid for the building permit which was later renewed by Mrs. Knott. He testified that he had a degree in construction management from Michigan State University and was a licensed Florida contractor. He was designated an expert in residential construction and testified that JWH had a duty to use reasonable care for the safety of the persons on the construction site. This testimony was supported by JWH Vice President Mike Roberts. He testified JWH was concerned with safety, but only if JWH was in control of the construction site. Larsen also testified that he had been on the site earlier on the day of the accident, observed the faulty wiring, and told the Knotts about the problem before he left. Larsen knew that any temporary electrical power was required by OSHA to have ground fault circuit interrupter protection (GFCI), yet when he returned to the site and spoke with Walker, he never told him about the dangerous situation created by the temporary electrical power source. If GFCI protection had been available, Walker would not have been electrocuted.
JWH argues that there is a dispute of facts concerning who controlled the construction site and that it was a jury question. I disagree. Walker was there to complete trim work required under the contract to be performed by JWH. He could not do his job until the Knotts had completed the interior build-out. Further, he was on the site to complete the plumbing trim-out which included installing tubs, sinks, taps and the hot water heater. There were three phases to the construction of the Knotts’ home, and I agree that during phase two, JWH had little control. As noted by the majority, Walker was on the site during phase three of JWH’s contract. Here, JWH was completing the *437 last of its contract work so a certificate of occupancy could be issued.
Citing Conklin v. Cohen, 287 So.2d 56 (Fla.1973), and Lewis v. Sims Crane Service, Inc., 498 So.2d 573 (Fla. 3d DCA 1986), JWH argues that the Knotts were actively involved in the construction of the home during phase three and controlled the construction site, and that it was therefore the Knotts’ responsibility to ensure that the premises were safe. These cases are inapposite. In Conklin, the court held that an owner who actively participates in construction to the extent that he directly influences the manner in which the work is performed can be held liable for damages caused by his negligence. Conversely, a passive, nonparticipating owner cannot be held liable. Here, the trial court ruled that, at minimum, the Knotts’ and JWH’s liability was coextensive. Lewis holds that an owner/general contractor can be held liable for injury on a construction site, and his liability does not depend upon his active participation. Rather, the owner/general contractor has a duty to maintain a construction site in a reasonably safe condition. Here the Knotts were not the owner/general contractor. See also Atlantic Coast Development Corp. v. Napoleon Steel Contractors, 385 So.2d 676 (Fla. 3d DCA 1980).
Under Florida law, contractors may share responsibility for injuries caused on or around a construction site even though the landowner retains some possession and control of the premises. Worth v. Eugene Gentile Builders, 697 So.2d 945 (Fla. 4th DCA 1997). Further, in Alles v. Department of Professional Regulation, Construction Industry Licensing Board, 423 So.2d 624 (Fla. 5th DCA 1982), this court held essentially that a contractor cannot abdicate its responsibility to supervise a work site. In Alies, a condominium structure collapsed during construction, resulting in a great loss of life. The licensing board sought to revoke or suspend the license of the qualifying contractor because he had failed to supervise the project. The qualifying contractor argued that he had had no involvement at any time with any phase of the project, and that another person, named Stoner, was the de facto qualifying contractor. This court held that the contractor could not be relieved of his responsibility by allowing someone else to exercise his duties. This would circumvent the whole purpose of the statute and would allow a contractor to rent his license. Id. at 626-27.
In the instant case, JWH’s agent, Larsen, was the qualifying residential contractor for a company which agreed to build what Larsen stated to be 75 percent of a completed house. At the time of the accident, Larsen was still the qualifying contractor, so he still had a duty to keep the premises safe. Furthermore, on the day of the accident, JWH, through Larsen, in fact exercised some control when he visited the site.