ALTENBERND, Judge,
Concurring specially.
I concur in this opinion with the greatest of reluctance. Worthington’s primary mistake was its failure to create two corporations — one to own the development and one to serve as the general contractor. If it had taken this simple legal step, it would not have been liable in this case.
The duty owing to an employee on a construction site by an “owner/general contractor” has been a confusing subject ever since the Third District issued its opinion in Lewis v. Sims Crane Service, Inc., 498 So.2d 573 (Fla. 3d DCA 1986). That opinion unfortunately intermingled a discussion of liability for the operation of a crane as a nondelegable duty with a discussion of the right to indemnity by a passive tortfeasor from an active tortfeasor. Id. at 574-75. The brevity of that opinion has caused later courts to conclude that an owner/general contractor owes a greater duty to employees of the contractors on the worksite than the duties owed by either an owner or a general contractor. If I had the authority in this case, I would recede from this line of cases.
In this case, Worthington, by the requirements of its contracts with the contractors on the job, arranged and indirectly paid for workers’ compensation coverage on all of the employees on the jobsite.[1] Nevertheless, it has no workers’ compensation immunity as an owner and actually ends up paying damages in this negligence action to reimburse the workers’ compensation carrier for the extensive medical expenses and lost wages associated with an accident that in my mind is entirely the fault of Mr. Mejia’s employer, Sunshine Masonry. I cannot understand any valid policy justification for this outcome, but apparently it is the law.
I. Ohio Casualty’s Role in this Appeal
Before discussing the merits, a procedural issue in this case warrants comment. This court permitted Ohio Casualty to appear in this appeal as a separate appellant with separate counsel. We did not require Worthington and Ohio Casualty to limit their combined initial briefs to fifty pages, and Ohio Casualty was permitted to brief issues that arose during the trial and before its involvement in the case. At the time this court permitted this procedure, we did not understand that the interests of Worthington and Ohio Casualty were identical.
At least in theory, if an insurance company such as Ohio Casualty had a separate issue that it wished to brief concerning its inclusion on the judgment under section 627.4136(4), it might be entitled to separate counsel and a separate brief. In this case, however, its interests align with its insured. Procedurally, this case is indistinguishable from cases under the procedures used in the 1970s when insurance carriers were routinely parties to the litigation during the trial. See, e.g., Ortega v. Perrini & Sons, Inc., 371 So.2d 203 (Fla. 2d DCA 1979). Just as the insured and *89 the insurance company were entitled to be represented by only one law firm and entitled to file only one set of briefs in compliance with the rules of procedure during that period, it seems to me that they should be limited in the same fashion today when the insurance carrier is joined at the end of the trial.
II. In this Context, the Duty of an Owner/General Contractor Should not Be Greater than the Combined Duties of an Owner and a General Contractor
It is a well established general rule that a property owner who hires an independent contractor to perform construction or repair work on the property is not liable for injuries to the independent contractor’s employee arising from negligence in the performance of that work, but is only responsible to address potential dangers on the premises of which the property owner has actual or constructive notice. See Lake Parker Mall, Inc. v. Carson, 327 So.2d 121 (Fla. 2d DCA 1976); Indian River Foods Inc. v. Braswell, 660 So.2d 1093 (Fla. 4th DCA 1995); Horton v. Gulf Power Co., 401 So.2d 1384 (Fla. 1st DCA 1981). In this case, there was great confusion as to whether to describe Sunshine Masonry as an independent contractor. However, unless Mr. Mejia wishes to classify Sunshine Masonry as a subcontractor, it seems clear to me that vis-a-vis Wor-thington as the owner, Sunshine Masonry is an independent contractor. If this case were controlled by our opinion in Lake Parker Mall, then Worthington would be entitled to a directed verdict in its capacity as owner.
Judge Villanti’s opinion for the court correctly relies on Conklin for the proposition that an owner who becomes too involved on the jobsite can become liable for negligent acts that injure workers on the jobsite. Conklin, however, was not a case in which the owner had a licensed general contractor on staff and was, thus, an “owner/general contractor” as that phrase is used in Sims Crane. In this case, I conclude that all of the evidence describing the involvement of Worthington deals with the actions of its employees whose job descriptions fall into the category of general contractor. Thus, if Worthington had merely created a second corporation for the general contractor’s activities, its role as owner would not have involved the type of active participation that led to the owner’s liability in Conklin. Likewise, the alleged failure of Mr. Bontrager to prevent Sunshine Masonry from performing its contractual duties in a negligent manner, if he had been employed by a separate general contracting corporation, would not have been the type of action that would have overcome workers’ compensation immunity. See, e.g., Fred G. Wright, Inc. v. Edwards, 642 So.2d 808, 809 (Fla. 2d DCA 1994) (holding general contractor was a statutory employer of sub-subcontractor’s employee and therefore entitled to same immunity under workers’ compensation law as sub-subcontractor which purchased workers’ compensation).
Thus, I follow the case law and the legal presentation in the majority’s opinion because it is apparently the law. In most cases, this law does not heighten safety on the jobsite; it merely generates business for the lawyers who create additional corporations to avoid the illogic of Sims Crane.
In Sims Crane, 498 So.2d at 674, the plaintiff was a hoist or elevator operator at a construction site. From the opinion, it is unclear who employed the plaintiff. The owner/general contractor in that case was Greenwich, Ltd. It was paying rent on the hoist, which it apparently leased from Sims Crane Service. The opinion recites that Greenwich had obtained a permit not *90 only to build the building but also to use the hoist. Id. at 575. The defect in the hoist that caused the injury was a door that did not fully open. Id. at 574. Greenwich had actual knowledge that the door was broken and had instructed that the hazard be removed or repaired prior to the accident. Id. The opinion observes that a construction hoist is an inherently dangerous instrumentality. Id. at 575. The controversial and confusing portion of this opinion reads as follows:
An owner/general contractor can be held liable for an injury on a construction job site and this liability does not depend upon active participation, contrasted with a mere owner which does require active participation.
Id. at 574 (citations omitted).
It may have been helpful if the Third District had expanded on this reasoning. The opinion is drawing a distinction between the “active” participation required to make a mere owner liable and the type of participation required to make an owner/general contractor liable for injuries caused by a dangerous instrumentality that the owner/general contractor had obtained for the workplace. Unfortunately, the opinion does not elaborate on the type of participation that is to be contrasted with “active” participation.
The opinion, however, gives a hint as to the type of participation it envisions when it states: “An owner/general contractor has the ultimate duty to maintain a construction site in a reasonably safe condition.” Id. (emphasis added). The opinion was written at a time when active/passive indemnity was a common claim. Under this theory, indemnity could be obtained from an active tortfeasor by a defendant who was merely passively liable. See Castle Constr. Co. v. Huttig Sash & Door Co., 425 So.2d 573, 574-75 (Fla. 2d DCA 1982) (citing Houdaille Indus., Inc. v. Edwards, 374 So.2d 490 (Fla.1979)). Considered in this context, I believe Sims Crane is explaining that the owner/general contractor had a nondelegable duty to assure the safety of the hoist as a dangerous instrumentality but that it may be entitled to indemnity from the active tortfeasor if the facts warrant that indemnity.
The cases cited in Sims Crane tend to support this reading. It relies first and foremost on Atlantic Coast Development Corp. v. Napoleon Steel Contractors, Inc., 385 So.2d 676 (Fla. 3d DCA 1980). Atlantic Coast Development is a case in which an owner/general contractor successfully maintained an action to obtain indemnity from a subcontractor. Id. at 678. The subcontractor, Napoleon Steel, was a crane operator who had negligently injured the employee of another subcontractor. Id. at 678-79. The owner/general contractor settled with the injured employee, but because it had a nondelegable duty, “i.e. ultimate liability” for the acts of the actively negligent crane operator, it was allowed to obtain indemnity from the crane operator. Id. at 680.
In addition to Atlantic Coast Development, the decision in Sims Crane relies for support on Cadillac Fairview of Florida, Inc. v. Cespedes, 468 So.2d 417 (Fla. 3d DCA 1985), and Pearson v. Harris, 449 So.2d 339 (Fla. 1st DCA 1984). Cadillac Fairview involved an owner/general contractor who violated safety standards by not having guard rails around an open, unfinished stairwell. 468 So.2d at 419. The worker inadvertently stepped backward into the unguarded opening. Id. The owner in Cadillac Fairview would appear to have liability under the general rule applying to property owners because it was actively supervising the jobsite and knew that the stairwell was unguarded. Id. at 421. Pearson held that the injured worker could not make a claim against a *91 property owner under the unique facts in that case and discusses Atlantic Coast Development only in dicta. 449 So.2d at 348-44.
Mr. Mejia is not a worker who was injured by a dangerous instrumentality for which the owner/general contractor had a nondelegable duty for the negligence of another contractor. This is not a case where the owner knowingly permitted an open stairwell or other dangerous condition to exist on its property. Here, an employee of a subcontractor was injured when that subcontractor failed to follow the manufacturer’s instructions for the work that it had contracted to do. Wor-thington’s job supervisor had enough knowledge of the construction methods that he arguably knew or should have known on the day before this accident that the conditions were dangerous.[2] But for cases cited in the majority opinion, I would conclude that Worthington, as an owner/general contractor, could not be liable for the injuries to a subcontractor’s worker arising from a dangerous condition created by that contractor’s negligence in performing the task it was contracted to do. So long as the contractor is functioning independently and the owner has assured that workers’ compensation coverage is in place, I see no legal or economic justification for placing liability on the owner merely because the licensed general contractor is employed by the owner.
III. The Jury Instruction on “Ultimate Duty” Accords with the Law, but it Seems to Create an Unjustified Form of Heightened Liability
As well explained in Judge Villanti’s opinion for the court, the trial court instructed the jury on negligence by providing an initial preemptive charge that in-eluded the statement: “As the owner and general contractor for the construction project, Worthington Communities, Inc., had the ultimate duty to maintain the site in a reasonably safe condition.”
Outside the context of indemnity between active and passive tortfeasors, I have no idea what an “ultimate duty” is supposed to describe. Except for the cases cited in the court’s opinion, I am not aware of any recognition of such an “ultimate duty” as a concept of tort law. Mr. Mejia’s attorney used this unusual phrase to characterize Worthington as the “captain of the ship” and to intermingle arguments of vicarious liability with those of direct liability. The idea of “ultimate liability” as argued to this jury appears to me to create a unique form of heightened liability. Nevertheless, the trial court created the instruction based on a line of cases that currently is the law in Florida, even if I find the line of cases very questionable. I am hard pressed to reverse the trial court for basing its instructions on the precise language of these cases.

. Because Worthington has an employee who is the licensed general contractor on its own staff, the contract with Sunshine Masonry is technically direct with the owner. We are accustomed to thinking of a contractor like Sunshine Masonry as a subcontractor, but in this case that terminology is not legally correct.

. Worthington had no employee on the jobsite on the Saturday when the accident actually happened.