[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10256

Non-Argument Calendar

_____

ENDURANCE AMERICAN SPECIALTY INSURANCE
COMPANY,

Plaintiff-Appellant,

*versus*

L. PELLINEN CONSTRUCTION, INC.,
MATTAMY ORLANDO, LLC,
MATTAMY FLORIDA, LLC,
f.k.a. Mattamy (Jacksonville) Partnership,

Defendants-Appellees.

—————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:18-cv-02154-RBD-GJK

—————————————

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Endurance American Specialty Insurance Company appeals the entry of summary judgment against it in its action seeking a declaration of rights and liabilities under a commercial liability insurance policy that it issued to L. Pellinen Construction, Inc. After reviewing the record and the parties' briefs, we conclude that the district court correctly determined that the policy covered appellees Mattamy Orlando, LLC and Mattamy Florida, LLC as additional insureds and that the policy exclusions relied upon by Endurance did not apply. We therefore affirm.

**I.**

In December 2016, while working on the roof trusses for a new home in Kissimmee, Florida, Esdras Ambrocio fell and landed on the concrete slab some 15–20 feet below. Ambrocio was seriously injured and incurred significant expenses for medical treatment and life care.

After paying hundreds of thousands of dollars for those continuing expenses, the workers' compensation carrier for

Ambrocio's employer filed a personal-injury lawsuit in his name against several entities involved in the construction of the home. Those entities included (among others) L. Pellinen Construction, Inc., the residential construction company that had subcontracted with Ambrocio's employer to help with framing the house; Mattamy Florida, LLC, the owner of the lot where the house was being built, as well as most or all of the other lots in the subdivision; and Mattamy Orlando, LLC, an affiliate of Mattamy Florida that had hired Pellinen to do framing and sheathing work on the house.

Pellinen was insured under a commercial general liability policy issued by Endurance American Specialty Insurance Company. The policy required Endurance to defend and indemnify Pellinen for covered bodily-injury claims, subject to certain exclusions. It also extended coverage to "additional insureds" for liability arising from Pellinen's work for the additional insureds or from the additional insureds' acts or omissions in connection with their "general supervision" of Pellinen's work, if such coverage was required by written contract, and subject to the same exclusions.

Mattamy Florida and Mattamy Orlando tendered their defense in Ambrocio's lawsuit to Endurance, claiming that they were additional insureds under Pellinen's policy by virtue of a written agreement with Pellinen. Endurance refused to defend the Mattamy entities, asserting that the policy did not provide coverage for Ambrocio's lawsuit because three policy exclusions applied: a Workers' Compensation exclusion, an "Employer's Liability" exclusion, and a "Multi-Unit Construction Project" exclusion.

Endurance raised the same three exclusions in a declaratory judgment action it filed in federal court, seeking a declaration that it had no duty to defend or indemnify Pellinen or the Mattamy entities in Ambrocio's personal injury lawsuit.  The parties in the declaratory judgment action filed cross-motions for summary judgment.  The district court ultimately granted the Mattamy defendants' motion for summary judgment and denied Endurance's motion in relevant part, finding that Mattamy Florida and Mattamy Orlando were "additional insureds" under the policy and that the exclusions raised by Endurance did not apply to them.[1]  Endurance now appeals.

## II.

We review a district court's rulings on cross-motions for summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party on each motion. *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). Summary judgment is appropriate when the record evidence shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

---

[1] The district court granted Endurance's motion as to Pellinen.  Pellinen has not appealed that decision.

We also review a district court's interpretation of a contract, including an insurance policy, de novo. *Tobin v. Mich. Mut. Ins. Co.*, 398 F.3d 1267, 1274 (11th Cir. 2005).

### III.

First, we consider Endurance's arguments that the district court erred in finding that Mattamy Florida and Mattamy Orlando were entitled to coverage as "additional insureds" under the policy. We then consider whether the exclusions raised by Endurance relieved it of the obligation to defend the Mattamy defendants against the personal injury action brought by Ambrocio. None of Endurance's arguments are persuasive; we affirm the district court's judgment in favor of the Mattamy defendants.

### A.

Endurance contends that the district court exceeded its authority by declaring that Mattamy Florida and Mattamy Orlando were entitled to coverage as additional insureds under the policy issued to Pellinen, arguing that this issue was beyond the scope of its declaratory judgment action. We disagree.

The question of the Mattamy defendants' insured status was squarely before the district court from the time that Endurance named them as defendants in the declaratory judgment action. In its complaint, Endurance asked the district court to declare whether the Pellinen policy provided coverage to the Mattamy defendants for Ambrocio's personal injury claim. Endurance alleged a "bona fide, actual, present, and practical need for a declaration of

the parties' rights and duties, if any, under the Endurance Policy issued to Pellinen," and it sought a judgment declaring that it had no duty to defend or indemnify the Mattamy defendants due to specified exclusions in the policy. In their answer to the complaint, the Mattamy defendants asserted as an affirmative defense that they were entitled to a defense and indemnity in the personal injury action because they were additional insureds under the policy.

The parties also raised the question of the Mattamy defendants' insured status in their cross-motions for summary judgment, each relying in part on the "Additional Insured Endorsement" in the policy. In its motion, Endurance explained that the exclusions it relied on barred coverage for the Mattamy defendants "[p]ursuant to the terms of the Endurance Policy's Additional Insured Endorsement"; the Mattamy defendants asserted that the same endorsement entitled them to coverage under the policy. The parties having raised the question of the Mattamy defendants' status as additional insureds in their pleadings and in their motions for summary judgment, the district court did not err in addressing it.

B.

Endurance also argues that the district court erred in finding that the Mattamy defendants were entitled to a defense in the personal injury action under the policy's additional insured endorsement because (1) the policy provided liability coverage for additional insureds only in connection with their supervision of Pellinen's work, which was not at issue in the personal injury action; and (2) a question of fact remained as to whether the Mattamy

defendants' written agreement with Pellinen was in effect at the time of Ambrocio's accident.  Again, we disagree.

The additional insured endorsement in the policy provides that any "entity required by written contract . . . to be named as an insured is an insured but only with respect to liability arising out of" (as relevant here) "'your work' for the additional insured, or acts or omissions of the additional insured, in connection with their general supervision of 'your work.'"  The policy states that "you" or "your" refers to the named insured—Pellinen—and defines "your work" to mean "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations."

Ambrocio's complaint alleged that the Mattamy defendants were the owners and developers of the property, that Pellinen acted as the general contractor, that both the Mattamy entities and Pellinen were involved in conducting and overseeing the construction and framing of the home, and that the Mattamy defendants were also involved in the purchase and storage of the trusses that allegedly failed and caused Ambrocio's accident.  The complaint further alleged that Pellinen hired Ambrocio's employer to assist with the construction and framing of the home, and that both the Mattamy defendants and Pellinen were liable for, among other things, failing to inspect and properly store the trusses that allegedly broke and caused Ambrocio's fall, failing to provide a safe workplace, and "failing to properly supervise the work."

These allegations, though vague, are sufficient to bring Ambrocio's lawsuit within the coverage provided by the policy for liability arising from the Mattamy defendants' "general supervision" of work done by Pellinen or on its behalf, or of materials furnished in connection with such work.  Under Florida law, "if the complaint, fairly read, contains any allegations which could fall within the scope of coverage, the insurer is obliged to defend the entire action," even if the complaint leaves some doubt as to the nature or validity of the harms alleged, or includes allegations that fall outside the scope of coverage.[2] *Psychiatric Assocs. v. St. Paul Fire & Marine Ins. Co.*, 647 So. 2d 134, 137 (Fla. Dist. Ct. App. 1994); *see Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405–06 (11th Cir. 1993).

Endurance also contends that a factual dispute exists regarding the effective date of the written contract that the Mattamy defendants rely on to give them additional-insured status.  In the signed (but undated) contract, Pellinen agreed to perform construction work according to purchase orders issued from time to time by Mattamy Orlando and to procure liability insurance naming Mattamy Orlando and its affiliates as additional insureds.  The Mattamy defendants submitted affidavit testimony stating that (1) Mattamy Orlando entered into the contract with Pellinen "on

---

[2] Florida law applies in this diversity-jurisdiction case involving insurance coverage under a policy that was issued for delivery in Florida. *See Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1141 (11th Cir. 2011); *Strochak v. Fed. Ins. Co.*, 717 So. 2d 453, 455 (Fla. 1998).

or about December 1, 2015"; (2) Mattamy Florida and Mattamy Orlando share the same parent company, and Mattamy Florida is Mattamy Orlando's sole member and manager; (3) in September 2016, Pellinen provided Mattamy Orlando with a Certificate of Liability Insurance stating that the Mattamy defendants had been added as additional insureds under the Endurance policy; and (4) in December 2016, pursuant to the contract, Mattamy Orlando issued purchase orders for Pellinen to perform framing and other construction work on the house where Ambrocio was injured. Endurance does not contest the authenticity or terms of the contract, and it does not present any evidence to challenge the Mattamy defendants' affidavit testimony. Instead, it contends that because the "effective date" line on the contract was left blank, a genuine issue of material fact as to whether the contract was in effect in December 2016 exists, precluding summary judgment.

But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986) (emphasis in the original). No genuine issue for trial exists here—the Mattamy defendants presented affidavit evidence that Mattamy Orlando entered into the agreement with Pellinen in December 2015, before Ambrocio's accident, and that Mattamy Orlando and Pellinen were operating under the con- contract in December 2016 when the accident occurred; Endurance presented no evidence to the contrary. This state of the

record "could not lead a rational trier of fact to find for the non-moving party," so "there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## C.

We turn next to the Workers' Compensation and Employer Liability exclusions in the policy.  The Workers' Compensation exclusion states that the policy does not apply to "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law."  Under Florida law, employers are obligated to provide workers' compensation for their actual and "statutory employees."  Fla. Stat. § 440.10; *Fla. Ins. Guar. Ass'n, Inc. v. Revoredo*, 698 So. 2d 890, 891–92 (Fla. Dist. Ct. App. 1997).  The Employer's Liability exclusion excludes coverage for bodily injury to the insured's employees injured during the course of their employment or while performing related duties.  The parties agree that Ambrocio was not actually employed by any of the Mattamy defendants, so the applicability of either exclusion turns on whether Ambrocio was a "statutory employee" of one or more of the Mattamy entities.  If so, both exclusions apply; if not, neither one does.

The concept of the "statutory employee" under Florida law comes from the Florida Workers' Compensation Act, which provides that any "contractor" in the construction industry who sublets any part of his or her "contract work" to a subcontractor is liable for payment of workers' compensation to the subcontractor's employees, as well as to his or her own employees.  Fla. Stat.

§ 440.10(1)(b).  In other words, "'[c]ontractors' who sublet work become statutory 'employers' of their subcontractors' employees" under the Act.  *Cadillac Fairview of Fla., Inc. v. Cespedes*, 468 So. 2d 417, 420 (Fla. Dist. Ct. App. 1985).  Although "contractors" are obligated to provide workers' compensation for all of their statutory employees, they are otherwise generally immune from liability for workplace injuries sustained by those employees.  Fla. Stat. § 440.11; *see Cespedes*, 468 So. 2d at 420.

A "contractor" in this context is one who has "incurred a contractual obligation to a third party, a part of which obligation the [contractor] has delegated or sublet to a subcontractor whose employee is injured."  *Pullam v. Hercules Inc.*, 711 So. 2d 72, 73 (Fla. Dist. Ct. App. 1998) (alteration in the original) (citation omitted).  An entity does not become a "contractor" under the statute merely by entering a contract with a subcontractor; instead, under the plain language of the statute, the contractor must have a primary contractual obligation to a third party, a portion of which he "sublets" to another.  *Jones v. Fla. Power Corp.*, 72 So. 2d 285, 289 (Fla. 1954); *Cuero v. Ryland Grp., Inc.*, 849 So. 2d 326, 328 (Fla. Dist. Ct. App. 2003).

Endurance contends that Mattamy Orlando was acting as a "contractor" for the project, so that Ambrocio—who was employed by a subcontractor hired by Pellinen, which in turn was a subcontractor of Mattamy Orlando—was Mattamy Orlando's statutory employee and coverage is barred under the Workers' Compensation and Employer's Liability exclusions.  But Endurance has

not identified any allegations in Ambrocio's complaint or evidence in the record indicating that Mattamy Orlando had a contractual obligation to any third party with respect to the construction project at issue.  Rather, the allegations in the complaint and the extrinsic evidence cited by Endurance indicate that Mattamy Orlando was acting on its own behalf (or on behalf of its sole owner and manager, Mattamy Florida) as a property owner, developing its property for its own profit.

Endurance acknowledges that Ambrocio's complaint identifies Mattamy Orlando as the "owner/developer" of the home where the accident occurred.  It argues, however, that Mattamy Orlando "assumed the roles of contractor and employer" by acting as a general contractor in its contractual relationship with Pellinen and (according to Ambrocio's complaint) taking an active role in the construction of the home where Ambrocio was injured.  This argument is not well founded.

A property owner does not take on the role of a "contractor" and statutory employer under Florida law merely by acting as its own general contractor, by hiring a subcontractor, or by participating in a construction project on its property.  *See Heredia v. John Beach & Assocs., Inc.*, 278 So. 3d 194, 197 (Fla. Dist. Ct. App. 2019); *Cuero*, 849 So. 2d at 328–30; *see also Conklin v. Cohen*, 287 So. 2d 56, 59–60 (Fla. 1973) (owner with no primary contractual obligation was not a "contractor" entitled to workers' compensation immunity merely because it was alleged to have worked in concert

with its general contractor, and the owner could therefore be held liable for its negligence if it was actively involved in the project).

Endurance also argues that Mattamy Orlando should be judicially estopped from claiming here that it was not a contractor or statutory employer because it took the position in Ambrocio's lawsuit that it was entitled to workers' compensation immunity—immunity enjoyed by "contractors" and statutory "employers" under Florida law. "Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions" in separate proceedings, to the detriment of an adversary common to both proceedings. *Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1066 (Fla. 2001) (citation omitted). Under Florida law, the doctrine of judicial estoppel applies where (1) a party that successfully maintained a claim or position in a previous judicial proceeding (2) attempts to make a completely inconsistent claim or take a clearly conflicting position in a subsequent judicial proceeding (3) to the prejudice of the adverse party, and (4) subject to some exceptions, the parties are the same in both actions. *Salazar-Abreu v. Walt Disney Parks and Resorts U.S., Inc.*, 277 So. 3d 629, 631 (Fla. Dist. Ct. App. 2018).

Judicial estoppel does not apply here because the record contains no indication that Mattamy Orlando successfully maintained the position in Ambrocio's lawsuit that it was a "contractor" or statutory "employer" with respect to the construction project at issue. The Mattamy defendants moved to dismiss Ambrocio's complaint on the ground that they were entitled to workers' compensation

immunity because, based on the allegations in the complaint, they acted as the general contractor in building the home where Ambrocio was injured. Setting aside whether the Mattamy defendants could succeed on that argument, we see no indication that they did so. It appears instead that Ambrocio amended his complaint, dropping Mattamy Orlando as a defendant, before the court ruled on the motion to dismiss. Florida law is clear that "to work an estoppel, the position assumed in the former trial must have been successfully maintained." *Blumberg*, 790 So. 2d at 1066 (citation omitted). Because Mattamy Orlando did not successfully maintain the position that it was a "contractor" or statutory "employer" under Florida law in the state court action, it is not estopped from taking the opposite position here.

## D.

Last, we address Endurance's argument that the "Multi-Unit Construction Project" exclusion applied to bar coverage for Ambrocio's lawsuit. That provision of the policy excludes coverage for bodily injury or medical expense from an occurrence connected with the original construction of a "Multi-Unit Construction Project." The policy defines a "Multi-Unit Construction Project" as "any condominium, cooperative, townhouse or 'housing development' where the completed project will exceed 10 'residential units.'" A "housing development," in turn, is defined as a "series of separate dwellings being constructed on a single contiguous parcel of land." Endurance argues that this exclusion applies to Ambrocio's claim because the subdivision where Ambrocio's injury

occurred is a "housing development" exceeding 10 residential units.

In support of this argument, Endurance submitted evidence in the district court showing that the home where Ambrocio was working when he was injured was part of a subdivision called "Tapestry," developed by the Mattamy defendants. According to the county land records submitted by Endurance, Mattamy Florida purchased land in Kissimmee, Florida, in 2013. It then subdivided the land into dozens of residential lots designed for single-family houses or townhouses, and the county assigned each lot its own parcel identification number. The county records indicate that construction of the single-family home where Ambrocio was injured began in late 2016, on lot 136 of the Tapestry subdivision. Mattamy Florida sold the completed home and lot to an individual homeowner the following year.

Endurance argues that the Multi-Unit Construction Project exclusion applies because the home where Ambrocio was injured was part of a "housing development"—the Tapestry subdivision. Although the argument has intuitive appeal, the policy's definition of "housing development" does not fit the evidence that Endurance presented about the subdivision and the home where Ambrocio's accident occurred. That evidence indicated that while the subdivision included dozens of homes, the homes were not all "being constructed on a single contiguous parcel of land." Instead, by the time construction began, Mattamy Florida had divided Tapestry into many separate parcels of land, and each home—including the

home where Ambrocio was working when he fell—was being constructed on its own parcel.

Endurance contests this conclusion, arguing that the term "single contiguous parcel of land" in its policy unambiguously refers to the "parent parcel" of the development—here, the land that Mattamy Florida bought in 2013 and later subdivided into single-home lots. Even if we accept Endurance's reading of its policy language as reasonable, we cannot agree that its interpretation is the only reasonable one. As Endurance recognizes, Tapestry's "parent parcel" was subdivided into lots, each lot was identified as a separate "parcel" in county land records, and each lot or county "parcel" had a single home built on it. These facts make the Mattamy defendants' construction—that Tapestry was not a "housing development" as defined in the policy because each home in the subdivision was built on its own separate "parcel of land"—as reasonable as Endurance's. And where two reasonable interpretations of an undefined policy term exist, Florida law requires that we "resolve the ambiguity in favor of the insured by adopting the reasonable interpretation of the policy's language that provides coverage as opposed to the reasonable interpretation that would limit coverage." *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785–86 (Fla. 2004). We thus conclude that the Multi-Unit Construction Project exclusion in Endurance's policy did not bar coverage for Ambrocio's personal injury claim.

## IV.

The district court did not err in finding that the Mattamy defendants qualified as additional insureds under the commercial general liability insurance policy issued by Endurance to Pellinen, and that the Workers' Compensation, Employer's Liability, and Multi-Unit Construction Project exclusions did not bar coverage for the Mattamy defendants.  We therefore **AFFIRM** the district court's judgment denying Endurance's motion for summary judgment as to Mattamy Florida and Mattamy Orlando and granting the Mattamy defendants' cross-motion for summary judgment.

**AFFIRMED.**