732 So.2d 433 (1999)
Lynn K. ECKELBARGER and John Eckelbarger, Appellants,
v.
Diane Michelle FRANK, as Personal Representative of the Estate of Phelicia Doreen Frank, deceased, and Diane Michelle Frank, individually, Appellee.
No. 98-01778.
District Court of Appeal of Florida, Second District.
April 30, 1999.
Daniel F. Pilka of Pilka & Associates, P.A., Brandon, for Appellants.
Steven H. Preston and Ronald L. Harrop of Gurney & Handley, P.A., Orlando, for Appellee.
*434 PATTERSON, Acting Chief Judge.
Appellants Lynn and John Eckelbarger (the Eckelbargers) challenge a nonfinal order determining the issue of liability in favor of appellee Diane Frank in this wrongful death lawsuit Frank initiated as the result of her daughter's drowning. We reverse the trial court's ruling that a violation of Polk County, Florida, Ordinance No. 82-19 (Aug. 10, 1982) (ordinance 82-19)[1] results in strict liability; rather, we hold that a violation of ordinance 82-19 results in negligence per se. Therefore, we remand for further proceedings consistent with this opinion.
Frank, as personal representative of the estate of Phelicia Doreen Frank, and individually, filed a wrongful death action against the Eckelbargers for Phelicia's drowning in the Eckelbargers' backyard swimming pool, located in Polk County, Florida. The record reflects that on September 7, 1994, while Diane Frank was preparing a bath for her children, eighteen-month-old Phelicia and three-year-old Patrick, the children left their home through a sliding glass door. It is believed that Patrick pulled a chair up to the door, stood on the chair, unlocked the door, and the two children wandered away. Frank testified in her deposition that approximately five minutes after she went to draw the bath she noticed her children were missing. She went outside to look for them and, after searching around her home, she saw Patrick running up the driveway. Frank asked him where Phelicia was, and Patrick began to show her the way to the Eckelbargers' backyard, which was about ¼ mile from Frank's home. Patrick showed Frank through an open gate and into the backyard. Frank then noticed the pool and found Phelicia.
The Eckelbargers' backyard had a six-foot-high wooden privacy fence and a fifty-eight-inch-high chain-link gate with a U-shaped latch. It is disputed whether the gate was closed when the Frank children came upon the property. It is the Eckelbargers' theory that the gate was closed, that Patrick opened the gate, and that he also lowered the swing-up steps to this partially above-ground pool.
At issue is the trial court's ruling, on motion for summary judgment, that ordinance 82-19 is a strict liability ordinance. Based on that ruling, the trial court entered a nonfinal order determining that the Eckelbargers were strictly liable for Frank's damages and directing that the cause proceed to trial on the remaining issue of damages. Ordinance 82-19 provides, in pertinent part, as follows:
SECTION 1: Intent. It is recognized that swimming pools which are not surrounded by fences or safety barriers pose a threat to the safety of the citizens of Polk County, Florida, especially young children. The purpose of this ordinance is to provide a minimum standard of protection against the hazards of unprotected and easily accessible swimming pools.
. . . .
SECTION 3: Permits. Before any work is commenced, permits shall be secured for all swimming pools and for the safety barriers. Plans shall contain all details necessary to show compliance with the terms and conditions of this ordinance. No swimming pool permit shall be issued unless simultaneously therewith a permit is secured for the erection of the required safety barrier. If the premises are already enclosed, as hereinafter provided, a permit for the safety barrier shall not be required if, upon inspection of the premises, the existing barrier and gates are proven to be satisfactory.
. . . .

*435 SECTION 6: Height. The minimum height of the safety barrier shall not be less than four feet.
SECTION 7: Location of barrier. The safety barrier shall be erected either around the swimming pool or around the premises on which the swimming pool is erected. In either event, it shall enclose the area entirely, prohibiting unrestrained admittance to the enclosed area.
SECTION 8: Gates. Gates shall be of the spring lock type, or equivalent, so that they shall automatically be in a closed and fastened position at all times.
. . . .
SECTION 12: Refusal of permit. It shall be within the discretion of the director of the Building and Zoning Department to refuse approval of any barrier which, in his opinion, does not furnish the safety requirement of this section i.e., that is high enough and so constructed to keep children of preschool age from getting over or through it.
. . . .
SECTION 17: Warning. The degree of protection afforded by this ordinance is considered reasonable for regulatory purposes. The provisions of this ordinance shall not be construed by any person to replace that degree of care which is required to properly supervise and control either their own premises or their own children who may wander upon the premises of another where a swimming pool is located. The degree of protection afforded by this ordinance is declared to be minimal and it is specifically recognized that any safety barrier may be surmounted under the proper circumstances.
Statutes and ordinances are categorized in three groups to determine the standards to apply when there is a violation of the statute. These categories come under the general headings of strict liability, negligence per se, and evidence of negligence. See deJesus v. Seaboard Coast Line R.R., 281 So.2d 198 (Fla.1973). The Eckelbargers contend that the trial court erred in ruling that ordinance 82-19 is a strict liability ordinance. While the Eckelbargers admitted to a substantial violation of the ordinance in not having a self-closing, self-latching gate, they contested the ruling that a substantial violation of the ordinance results in strict liability, thereby precluding their arguments on proximate causation[2] and Frank's comparative negligence.
A negligence per se ordinance, on the other hand, entitles the plaintiff to Florida Standard Jury Instruction (Civil) 4.9, which provides:
Violation of this [statute] [ordinance] is negligence. If you find that a person alleged to have been negligent violated this [statute] [ordinance], such person was negligent. You should then determine whether such negligence was a legal cause of the [loss] [injury] [or] [damage] complained of.
Under this standard, causation and comparative negligence are left to the trier of fact. Violations of statutes and ordinances that are neither strict liability nor negligence per se require the plaintiff to prove all elements of actionable negligence. See deJesus, 281 So.2d at 201. The issue on appeal is whether, as a matter of law, ordinance 82-19 falls in the classification of a strict liability ordinance, or whether it should be classified as negligence per se or evidence of negligence.
Strict liability statutes are "designed to protect a particular class of persons from their inability to protect themselves." deJesus, 281 So.2d at 201. Child labor laws and statutes prohibiting the sale *436 of firearms to minors fall within this group. See Sloan v. Coit Int'l, Inc., 292 So.2d 15 (Fla.1974); Tamiami Gun Shop v. Klein, 116 So.2d 421 (Fla.1959). Ordinance 82-19 contains language that indicates the intent to protect young children from their inability to protect themselves. As Frank argues, the intent section of the ordinance refers to young children. More specifically, section 12 reflects the intent to protect preschool age children from drowning or water-related injuries by requiring that the barrier be constructed so that preschoolers cannot get over or through it.
We note, however, that the strict liability classification is a narrow one, and this is a "group of unusual and exceptional statutes." Klein, 116 So.2d at 423. The strict liability classification bars the defendant from alleging comparative negligence. See deJesus, 281 So.2d at 200 (noting that strict liability statute bars contributory negligence). Here, the record indicates that Frank admitted to the officer at the scene that her children "always ran off without her knowing it." Two neighbors told the officer that Frank "never watched her children and that she slept a lot during the day, while the kids played. It was common for the kids to be missing and walking around other neighborhoods." The ordinance even addresses this issue. Section 17, entitled "Warning," states, "The provisions of this ordinance shall not be construed by any person to replace that degree of care which is required to properly supervise and control either their own premises or their own children who may wander upon the premises of another where a swimming pool is located." Thus, the ordinance warns parents that they are not absolved from supervising their own children who may wander upon property where a pool is located. Based on these facts, we cannot conclude that the drafters of the ordinance intended a result of strict liability.
The second category we must examine, then, is negligence per se, which encompasses statutes or ordinances which protect a particular class of people from a particular injury or type of injury. See deJesus, 281 So.2d at 201 (holding that violation of statute was negligence per se where statute protected motorists from danger of train collision). In Newsome v. Haffner, 710 So.2d 184, 186 (Fla. 1st DCA), review denied, 722 So.2d 193 (Fla. 1998), the First District held that "a cause of action in negligence per se is created when a penal statute is designed to protect a class of persons, of which the plaintiff is a member, against a particular type of harm." The court explained that the statute at issue, the "open house party" statute, "is clearly designed to protect minors from the harm that could result from the consumption of alcohol or drugs by those who are too immature to appreciate the potential consequences." Id. at 185. While the court determined the violation of this penal statute created a negligence per se cause of action, it appears to fit within the criteria for strict liability: protecting a particular class of persons from their inability to protect themselves. We note that Newsome cited to Klein and Tampa Shipbuilding & Engineering v. Adams, 132 Fla. 419, 181 So. 403 (1938), both strict liability cases, dealing with firearm sales to minors and child labor, respectively.
We similarly conclude that ordinance 82-19 creates negligence per se rather than strict liability. We recognize that the statute in Newsome was a penal one, making it a criminal offense for a social host to knowingly serve alcohol to a minor at an open house party. It is even more sensible in this case, however, to impose, instead of strict liability, the lesser standard of negligence per se when we have no indication that a violation of ordinance 82-19 would carry any criminal penalties. Furthermore, neither the parties nor our independent research have uncovered any Florida cases that address violations of swimming pool safety ordinances in the strict liability context.
*437 The Eckelbargers, relying on Machin v. Royale Green Condominium Ass'n, 507 So.2d 646 (Fla. 3d DCA 1987), contend that a violation of ordinance 82-19 should fall in the third category, evidence of negligence. As Frank points out, Machin did not address strict liability, but in reversing a summary judgment in favor of the defendant stated that "testimony that the gate did not self-close in violation of the code was evidence of negligence." Id. at 648. A statute or ordinance in the evidence of negligence category applies to the general public. See Grand Union Co. v. Rocker, 454 So.2d 14 (Fla. 3d DCA 1984). Ordinance 82-19 refers to a safety threat to "the citizens of Polk County, Florida, especially young children." While the language proclaims to apply to the general citizenry, it is immediately specified that young children are the focus. As the trial court aptly pointed out, "it is clear from the height restrictions and other language of the ordinance that its protections are focused on small people only." In fact, the ordinance specifically notes its concern of the barrier keeping "children of pre-school age from getting over or through it." Thus, it appears that the intent of the ordinance is not to protect the general public, and accordingly, the evidence of negligence category is inappropriate.
Thus, we hold that a violation of ordinance 82-19 is negligence per se, which would entitle Frank to Florida Standard Jury Instruction (Civil) 4.9 and would allow the Eckelbargers to raise the issues of proximate cause and comparative negligence. Accordingly, we reverse and remand for proceedings consistent with this opinion.
Reversed and remanded.
STRINGER, J., and DANAHY, PAUL W., (Senior) Judge, Concur.
NOTES
[1] Although the parties and the trial court refer exclusively to ordinance 82-19, the ordinance has been codified. See Polk County, Fla., Code of Ordinances art. VII, § 5-191-5-207 (Supp.1997).
[2] The Eckelbargers would have argued, based on the opinion of Frank's expert, Ronald Dale, that even if the gate had been self-closing and self-latching, it would not have been a greater impediment to trespassers such as Patrick than the gate that existed at the time of Phelicia's drowning.